UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ALVARO R. GARCIA,                    :

             Plaintiff,     :
                               08 Civ. 7778 (JSR)(HBP)
    -against-                    :

                               REPORT AND
HARRELL WATTS,                       :   RECOMMENDATION
et al.,
                       :
             Defendants.    :
----------------------------------X

        PITMAN, United States Magistrate Judge:

        TO THE HONORABLE JED S. RAKOFF, United States

District Judge,

I.  Introduction

        Plaintiff, Alvaro Garcia, a former federal inmate at

the Metropolitan Correctional Center ("MCC") in New York, New

York commenced this pro se action against twenty-four named

defendants and four John and Jane Does for alleged violations of

his constitutional rights pursuant to Bivens v. Six Unknown Named

Agents of the Federal Bureau of Narcotics, 403 U.S. 399 (1971)

and 42 U.S.C. § 1983.  All named defendants have moved to dismiss

plaintiff's claims pursuant to Federal Rule of Civil Procedure

12(b)(1) or 12(b)(6).  On April 20, 2009, I issued a report and

recommendation recommending that Michael Weil, Esq. and the

Federal Defenders' motions be granted in all respects (Docket

Item 46).  This report and recommendation addresses the remaining defendants' motions to dismiss.  For the reasons set forth below, I respectfully recommend that the remaining defendants' motion to dismiss be granted in part and denied in part.

II.  Facts[1]

On November 14, 2006, plaintiff was convicted and sentenced to a term of thirty months imprisonment.[2]  On May 24, 2007, plaintiff was transferred from the Allenwood Federal Correctional Institution to the MCC in New York (Complaint ("Compl."), dated Sept. 5, 2008, at 2 (Docket Item 2)).  Plaintiff alleges that, beginning in approximately August 2007, he was sexually assaulted and repeatedly harassed by defendant Officer Joel Rodriguez, in violation of his Eighth Amendment constitutional rights (Compl. at 2).  Specifically, plaintiff alleges that during a visit to the office of Counselor Espinet, Rodriguez approached plaintiff and said "Pat Down" while grabbing plaintiff's buttocks; plaintiff was the only inmate subject to a pat down at this time (Compl. at ¶ 1).  In September 2007, Rodriguez again grabbed plaintiff and "rubbed his penis against the plain-

_____

[1]The facts set forth herein are drawn from plaintiff's Complaint, attached exhibits, and plaintiff's Memorandum of Law in Response to Defendant's Motion to Dismiss.

[2]Plaintiff does not indicate the offense for which he was imprisoned.

tiff's buttocks . . . [when] the plaintiff jumped away in sur-
prise, [] the defendant grabbed the plaintiff's hips, and forc-
ibly pulled the plaintiff toward his penis and rubbed against the
plaintiff's buttocks" (Compl. at ¶ 2).  After plaintiff reported
the incident to Officer Lugo, Rodriguez again approached plain-
tiff and asked if plaintiff "was having a bad morning?" while
stroking plaintiff's right hand (Compl. at ¶ 2).

Over the next year plaintiff alleges that Rodriguez
engaged in an ongoing and continuous pattern of harassment.  On
October 8, 2007, Rodriguez stood and stared at plaintiff in a
menacing manner (Compl. at ¶ 4).  The following day Rodriguez
approached plaintiff while he was sitting with another inmate and
stated "you guys like to write me up, so I'll give you more cop-
outs to do that" and proceeded to search plaintiff's cell.  After
completing his search of plaintiff's cell, Rodriguez handed
plaintiff a blank "cop-out" form (Compl. at ¶ 6; see also Request
for Administrative Remedy, dated October 14, 2007, attached as
Ex. 9 to the Compl. ("Oct. 14, 2007 Grievance")).[3]  On October
22, 2007, Rodriguez woke plaintiff at approximately 12:30 a.m. by
loudly knocking on plaintiff's cell and "illuminated his face

---

[3]Plaintiff's administrative grievance with regard to this
incident was denied on the ground that plaintiff's cell was
"searched for contraband as part of a random cell search" in
compliance with Program Statement 5521.05, "Searches of Housing
Units, Inmates, and Inmate Work Areas" (Response of D. Scott
Dodrill, dated March 24, 2008, attached as Ex. 40 to the Compl.).

with his flashlight in the cell door window and stared at plain-
tiff" (Compl. at ¶ 15).   Rodriguez repeated this behavior on the
night of October 29 while repeatedly asking plaintiff if he was
"still writing me up, you writing me up again?" (Compl. at ¶ 22).

In response to these incidents plaintiff filed an
administrative grievance and made several efforts to obtain legal
representation.   On November 14, defendant Officer Hicks issued
an incident report charging plaintiff with unauthorized conduct
during computer class because plaintiff had used the computer to
write a letter to defendant Michael Weil, Esq., a staff attorney
with the Federal Defenders, describing the sexual assaults and
ensuing harassment by Rodriguez and soliciting representation
(Compl. ¶ 26; see also Administrative Appeal Response by D. Scott
Dodrill ("Jan. 24, 2008 Admin. Resp."), dated January 24, 2008,
attached as Ex. 30 to the Compl.).   Defendant Daniel Ortiz
delivered this incident report[4] to plaintiff and they briefly

---

[4]On November 26, 2007, plaintiff filed a request for
administrative remedy, arguing that he had been deprived of due
process because this incident report did not contain the required
attachments (see Request for Administrative Remedy, dated
November 26, 2007, attached as Ex. 13 to the Compl. ("Nov. 26,
2007 Grievance")).   Plaintiff also alleged that he was deprived
of due process during the Unit Discipline Committee ("UDC")
hearing because the chairman, Suarez, harassed plaintiff about
his appeal in private and, ultimately, forged the Warden's denial
of plaintiff's appeal.   Plaintiff also claims that the response
to his appeal was delayed by two days, thereby leaving him with
only eighteen days to file his appeal instead of the requisite
twenty days (see e.g. Regional Remedy Appeal ("Dec. 19, 2007
Appeal"), dated December 19, 2007, attached as Ex. 20 to the
(continued...)

discussed plaintiff's allegations against Rodriguez.  Ortiz
offered to take plaintiff to the Special Housing Unit ("SHU") and
submit a request to transfer plaintiff to a different facility if
plaintiff felt that he was in danger; plaintiff declined these
"offers for protection" (Compl. ¶ 27; Plaintiff's notes at 11,
attached as Ex. 1 to the Compl.).  Defendant Hector Suarez
conducted the hearing at which plaintiff was found guilty of
engaging in the prohibited act of "Using any Equipment or Machin-
ery Contrary to Instructions or Posted Safety Standards (Code
319)"[5] (Compl. ¶¶ 27-29).  Plaintiff filed an appeal from this
incident and a request for an administrative remedy with defen-
dant James N. Cross, the warden of the MCC (Compl. ¶ 36).  Cross
appears to have denied both requests on December 4, 2007 (Re-
sponse to Request for Administrative Remedy ("Admin. Resp."),

---

[4](...continued)
Compl.).

[5]The hearing also involved a separate incident report issued
to plaintiff by officer Suarez on October 30, 2007.  Suarez
alleges that plaintiff disobeyed a direct order to help Suarez
dispose of some trash while plaintiff claims that he had been
ordered by Officer Adler Canales not to touch the "hot trash"
because it consisted of contraband confiscated from other inmates
(Nov. 26, 2007 Grievance; Inmate Request to Staff ("Staff
Request") at 1-3, dated November 27, 2007, attached as Ex. 17 to
the Compl.) (the "Hot Trash" incident).  Plaintiff later
approached Canales on November 19, 2007 and attempted to resolve
the confusion surrounding the Hot Trash incident.  Plaintiff
alleges that Officer Gonzales, who was with Suarez at the time,
told plaintiff to put his questions in writing and warned
plaintiff that he "don't want to hear about anything unless it
concerns your safety" (see Staff Request at 1-3).

dated December 4, 2007, attached as Ex. 19 to the Compl. ("Dec. 4 2007 Admin Resp.")).  On November 19, 2007 and again on November 26, 2007, defendant Gonzalez allegedly "threatened retaliation in the form of incident reports and placement in the Special Housing Unit for [plaintiff's] exercis[e] [of] his 1st Amendment right to redress grievances" (Compl. ¶¶ 34, 40).

During this same time period, Rodriguez's harassment allegedly continued unabated.  On November 18, 2007, Rodriguez came to plaintiff's cell and punched the cell door window (Compl. at ¶ 33).  Rodriguez allegedly "singled out" plaintiff for a cell search on December 5, 2007 and confiscated some of plaintiff's private property without cause (Compl. at ¶ 41).  On December 13, 2007, Rodriguez again allegedly knocked on plaintiff's cell window in the middle of the night and spent the entire night staring at plaintiff (Compl. at ¶¶ 42-43).  Following this incident, plaintiff mailed a letter on December 13 to a Mr. Gregory of Human Rights Watch Information, detailing the alleged sexual assaults and harassment.  Plaintiff believes that Rodriguez, who was on duty the evening of December 13-14, intercepted this letter (Compl. at ¶ 49).[6]

Plaintiff alleges that Rodriguez destroyed his "Gate Pass" resulting in plaintiff's being restricted to his unit

---

[6]Plaintiff filed an internal grievance with respect to the confiscation of his mail (Informal Resolution Form BP-8, dated December 23, 2007, attached as Ex. 23 to the Compl.).

during the months of January through March of 2008 (Compl. ¶ 56).
After plaintiff's gate pass was restored, Rodriguez saw plaintiff
working and allegedly stated "you got your gate pass again?  I'll
have to do something about [that]" (Compl. ¶ 74).  Plaintiff
further alleges that, on several separate occasions in March
2008, Rodriguez approached plaintiff, from behind, and whispered
that Rodriguez was plaintiff's in his ear "'daddy'" (Compl. ¶¶
66, 72).

On April 7, defendant Galleta issued an incident report
accusing plaintiff of insolence and placed plaintiff in the SHU
for four days (Compl. ¶ 77).  Plaintiff alleges that he was
placed in a cell covered with feces, blood and other bodily
fluids for two of the four days and was not provided with any
cleaning materials (Compl. ¶ 77).  Rodriguez visited plaintiff in
the SHU, asked plaintiff if he would like a shower and then
walked away laughing (Compl. ¶ 77).

On May 18, Officer Alvarado approached plaintiff and
asked him if he was "warming the hot-dogs" (Compl. ¶ 83).  When
plaintiff asked Alvarado why he would say such a thing, Alvarado
gestured towards Rodriguez, who allegedly winked and smiled at
plaintiff (Comp. ¶ 83).  On June 8, Rodriguez allegedly walked up
behind plaintiff and whispered "[a]re you warming the hot dogs?"
(Compl. ¶ 86).  Finally, after he was reassigned on June 10,

Rodriguez allegedly asked inmate Gloss to tell plaintiff "that [Rodriguez] loved him and sent hugs and kisses" (Compl. ¶ 87).

Plaintiff alleges that defendants, Jay Arrias, Adler Canales, D. Scott Dodrill, Rina Desai, Thomas Gomez, Fernando Gonzalez, S. Gregg, Wade Jones, Lamine N'Diaye, Ms. Pearson, and Rufus Williams, all were informed of Gonzalez's behavior and took no action (Compl. ¶¶ 11, 17, 25, 32, 34, 71, 90).

## III. <u>Analysis</u>

Plaintiff's appears to bring this action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), alleging that the defendants violated his First, Sixth, Eighth and Fourteenth Amendment rights.  The defendants move to dismiss all of plaintiff's claims on the grounds that:  (1) the Court lacks subject matter jurisdiction over constitutional claims brought against United States Bureau of Prisons employees acting in their official capacities, (2) Rodriguez's sexual assaults and harassment do not rise to the level of cruel and unusual punishment and, therefore, plaintiff fails to state an Eighth Amendment claim, (3) plaintiff fails to state a claim for denial of access to the courts, (4) plaintiff fails to state a First Amendment retaliation claim with respect to the alleged unauthorized cell search and plaintiff's placement in the SHU, (5) defendants Sadowski, Hicks, Ortiz, Suarez, Cross,

Desai, Gregg, Dodrill, and Watts lack the personal involvement
necessary to sustain a <u>Bivens</u> claim, (6) this Court lacks subject
matter jurisdiction over plaintiff's claims under the Federal
Tort Claims Act ("FTCA") and (7) under the Prison Litigation
Reform Act ("PLRA") plaintiff may not recover compensatory
damages for his emotional injuries (Defendants' Motion to Dismiss
("Def. Mot."), dated February 4, 2009, at 5-19; Docket Item 48).

    A.    Standard Applicable to a Motion to Dismiss
           Pursuant to Rule 12(b)(1) for
           <u>Lack of Subject Matter Jurisdiction</u>

        The defendants first move to dismiss plaintiff's <u>Bivens</u>
claims, against the defendants in their official capacities, on
the ground that the Court lacks subject matter jurisdiction over
these claims.  The standards applicable to a motion to dismiss
for lack of subject matter jurisdiction have been comprehensively
set forth by the Honorable Denise L. Cote, United States District
Judge, in <u>Cromer Finance Ltd. v. Berger</u>, 137 F. Supp.2d 452, 467
(S.D.N.Y. 2001):

> In assessing a motion to dismiss for lack of
> subject matter jurisdiction, a court must "accept as
> true all material factual allegations in the com-
> plaint," <u>Shipping Fin. Serv. Corp. v. Drakos</u>, 140 F.3d
> 129, 131 (2d Cir. 1998) (citing <u>Scheuer v. Rhodes</u>, 416
> U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)),
> but refrain from "drawing from the pleadings inferences
> favorable to the party asserting [jurisdiction]."  <u>Id</u>.
> (<u>citing</u> <u>Norton v. Larney</u>, 266 U.S. 511, 515, 45 S.Ct.
> 145, 69 L.Ed. 413 (1925)). Courts evaluating Rule
> 12(b)(1) motions "may resolve the disputed jurisdic-
> tional fact issues by reference to evidence outside the

pleadings, such as affidavits." Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).  Where jurisdiction is "so intertwined with the merits that its resolution depends on the resolution of the merits," the court should use the standard "applicable to a motion for summary judgment" and dismiss only where "no triable issues of fact" exist.  London v. Polishook, 189 F.3d 196, 198-99 (2d Cir. 1999) (citation omitted); see also Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 121 n.1 (2d Cir. 1998).

see also Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); Espada v. N.Y. Bd. of Elections, 07 Civ. 7622 (SAS), 2007 WL 2588477 at *2 (S.D.N.Y. Sept. 4, 2007).  The party asserting that the court has subject matter jurisdiction bears the burden of proving the court's jurisdiction.  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990); Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 93 (2d Cir. 2004); Bd. of Educ. v. N.Y. State Teachers Ret. Sys., 60 F.3d 106, 109 (2d Cir. 1995).

1.  Sovereign Immunity

In any suit in which the United States is a defendant "[t]he waiver of sovereign immunity is a prerequisite to sub-ject-matter jurisdiction." Presidential Gardens Assocs. v. United States, 175 F.3d 132, 139 (2d Cir. 1999), citing United States v. Mitchell, 463 U.S. 203, 212 (1983), and quoting Blatch-ford v. Native Vill. of Noatak, 501 U.S. 775, 786-87 n.4 (1991).

10

It is well settled that the United States enjoys sovereign immunity from suits except to the extent that it has waived such immunity. United States v. Navajo Nation, 537 U.S. 488, 502 (2003); United States v. Mitchell, supra, 463 U.S. at 212; United States v. Lee, 106 U.S. 196, 206 (1882) (explaining derivation of principle of sovereign immunity and its applicability to United States). "Because an action against a federal agency or federal officials in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994), citing Fed. Deposit Ins. Co. v. Meyer, 510 U.S. 471, 484 (1994); accord Langella v. United States, 6 F. App'x 116, 117 (2d Cir. 2001); Nwanze v. Morris, 6 F. App'x 98, 100 (2d Cir. 2001); Fuentes v. Parks, 03 Civ. 2660 (RMB), 2005 WL 911442 at *4 (S.D.N.Y. Apr. 18, 2005); Thomas v. Ashcroft, 02 Civ. 5746 (CBM), 2004 WL 1444735 at *4 (S.D.N.Y. June 25, 2004) (Bivens claims "must be brought against the federal officers in their individual capacities"), rev'd on other grounds, 470 F.3d 491 (2d Cir. 2006). The United States has not waived the defense of sovereign immunity with respect to constitutional claims brought against the BOP or its employees in their official capacities. Sereika v. Patel, 411 F. Supp.2d 397, 402 (S.D.N.Y. 2006); Williams v. Metropolitan Detention Center, 418 F. Supp.2d 96, 100 (E.D.N.Y.

2005); <u>Owusu v. Federal Bureau of Prisons</u>, 02 Civ. 915 (NRB),
2003 WL 68031 at *1 (S.D.N.Y. Jan. 7, 2003).  Thus, to the extent
that plaintiff's claims are brought against the individual
defendants in their official capacities, such claims are not
cognizable under <u>Bivens</u> and they should, therefore, be dismissed.
This does not, however, dispose of the case because the caption
indicates that plaintiff is suing the defendants in their offi-
cial and individual capacities

     B.   Standard Applicable to
         Defendants' Motion to Dismiss
         Pursuant to Rule 12(b)(6) for
         <u>Failure to State a Claim</u>

     The standards applicable to a motion to dismiss pursu-
ant to Rule 12(b)(6) are well settled and require only brief
review.

> When deciding a motion to dismiss under Rule 12 (b)(6),
> [the court] must accept as true all well-pleaded fac-
> tual allegations of the complaint and draw all reason-
> able inferences in favor of the pleader.  <u>See</u> <u>City of
> Los Angeles v. Preferred Communications, Inc.</u>, 476 U.S.
> 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); <u>Miree
> v. DeKalb County</u>, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490,
> 53 L.Ed.2d 557 (1977)(referring to "well-pleaded alle-
> gations"); <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d
> 1170, 1174 (2d Cir. 1993).  "'[T]he complaint is deemed
> to include any written instrument attached to it as an
> exhibit or any statement or documents incorporated in
> it by reference.'"  <u>Int'l Audiotext Network, Inc. v.
> Am. Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995)(quoting
> <u>Cortec Indus., Inc. v. Sum Holdings L,P.</u>, 949 F.2d 42,
> 47 (2d Cir. 1991)).  The Court also may consider "mat-
> ters of which judicial notice may be taken." <u>Leonard
> T. v. Israel Discount Bank of New York</u>, 199 F.3d 99,
> 107 (2d Cir. 1999) (citing <u>Allen v. WestPoint-Pepper-</u>

<u>ill, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991)).  In order
to avoid dismissal, a plaintiff must do more than plead
mere [c]onclusory allegations or legal conclusions
masquerading as factual conclusions." <u>Gebhardt v.
Allspect, Inc.</u>, 96 F. Supp.2d 331, 333 (S.D.N.Y. 2000)
(quoting 2 James Wm. Moore, Moore's Federal Practice ¶
12.34 [a][b](3d ed. 1997)).

<u>Hoffenberg v. Bodell</u>, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3

(S.D.N.Y. Sept. 30 2002); <u>see also</u> <u>In re Elevator Antitrust</u>

<u>Litig.</u>, 502 F.3d 47, 50 (2d Cir. 2007); <u>Johnson & Johnson v.</u>

<u>Guidant Corp.</u>, 06 Civ. 7685 (GEL), 2007 WL 2456625 at *4

(S.D.N.Y. Aug. 29, 2007).

The Supreme Court has recently clarified the proper

mode of inquiry in evaluating a motion to dismiss pursuant to

Rule 12(b)(6), which uses as its starting point the principle

that "[a] pleading that states a claim for relief must contain

. . . a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed.R.Civ.P. 8(a).

First, in <u>Bell Atl[antic] Corp. v. Twombly</u>, 550
U.S. 544 (2007), the Court disavowed the well-known
statement in <u>Conley v. Gibson</u> that "a complaint should
not be dismissed for failure to state a claim unless it
appears beyond doubt that the plaintiff can prove no
set of facts in support of his claim which would enti-
tle him to relief."  550 U.S. at 562.  Instead, to
survive a motion to dismiss under <u>Twombly</u>, a plaintiff
must allege "only enough facts to state a claim to
relief that is plausible on its face."  <u>Id</u>. at 570.

<u>Talley v. Brentwood Union Free Sch. Dist.</u>, Civ. 08-790, 2009 WL

1797627 at *4 (E.D.N.Y. June 24, 2009).

While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the grounds of his

13

> entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements
> of a cause of action will not do.  Factual allegations
> must be enough to raise a right to relief above the
> speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful
> in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (cita-

tions, internal quotations and alterations omitted).

However, "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable

to legal conclusions."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1939

(2009).  As a result, "a court considering a motion to dismiss

can choose to begin by identifying pleadings that, because they

are no more than conclusions, are not entitled to the assumption

of truth.  While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations."  129

S.Ct. at 1949.

In evaluating a motion under Rule 12(b)(6), a court

must determine whether a plaintiff has stated any facially

plausible claims.  A plaintiff's allegations state a facially

plausible claim when their factual content "allows the court to

draw the reasonable inference that the defendant is liable for

the misconduct alleged.  The plausibility standard is not akin to

a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  129 S.Ct. at

1950.  "Where a complaint pleads facts that are merely consistent

14

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  129 S.Ct. at 1949.   Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  129 S.Ct. at 1950, quoting Fed. Rule Civ. Proc. 8(a)(2).

Nevertheless, where, as here, a plaintiff proceeds pro se, the complaint must be liberally construed to raise the strongest claims the allegations suggest.  Haines v. Kernner, 404 U.S. 519, 520 (1972); In re Sims, 534 F.3d 117, 133 (2d Cir. 2008); Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  This rule applies "with particular stringency to [pro se] complaints of civil rights violations."  Phillip v. Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir. 2003).

### 1.   Eighth Amendment Claim

The defendants argue that plaintiff's allegations of two instances of sexual assault even when viewed in conjunction with the allegations of several months of harassment do not rise to the level of an Eighth Amendment violation (Def. Mot. at 10).

The Eighth Amendment sets constitutional boundaries on the conditions of imprisonment.  There are two requirements for

stating such a claim: (1) the alleged punishment must be "objec-
tively, sufficiently serious" such that it would be considered
cruel and unusual punishment under contemporary standards and (2)
the defendant must have acted with a "sufficiently culpable state
of mind." Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997),
citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981), and Farmer v.
Brennan, 511 U.S. 825, 834 (1994); Branham v. Meachum, 77 F.3d
626, 630 (2d Cir. 1996).  "Sexual abuse of a prisoner by a
corrections officer may, in some circumstances, violate the
prisoner's Eighth Amendment right to be free from cruel and
unusual punishment." Sharpe v. Taylor, 9:05-CV-1003 (GTS/GHL),
2009 WL 1743987 at *10 (N.D.N.Y. Jun. 18, 2009).  For example,
"severe or repetitive sexual abuse of an inmate by a prison
officer can be 'objectively, sufficiently serious' enough to
constitute an Eighth Amendment violation" because such repetitive
sexual abuse can cause severe physical and psychological harm.
Boddie v. Schnieder, supra, 105 F.3d at 861.  Moreover, "a prison
official who sexually abuses a prisoner can be found to have a
sufficiently culpable state of mind to violate the prisoner's
constitutional rights." Boddie v. Schnieder, supra, 105 F.3d at
861.  Nevertheless, in Boddie v. Schnieder, supra, 105 F.3d at
861, the Second Circuit held that

>           a small number of incidents in which [a plaintiff is]
>           verbally harassed, touched, and pressed against without
>           his consent . . . are despicable and, if true, [] may
>           potentially be the basis of state tort actions.  But

> [these incidents of harassment and touching] do not involve a harm of federal constitutional proportions as defined by the Supreme Court.

Accordingly, courts in this Circuit have routinely dismissed claims involving isolated instances of allegations of fondling and groping, similar to those made here, as insufficient to sustain an Eighth Amendment claim.  See e.g. Sharpe v. Taylor, supra, 2009 WL 1743987 at *10; Young v. Poff, 04 CV 320 (HBS), 2006 WL 1455482 at *4 (W.D.N.Y. May 22, 2006) (dismissing plaintiff's Eighth Amendment claim that he was groped by a correctional officer during a pat frisk); Morrison v. Cortright, 397 F. Supp.2d 424, 425 (W.D.N.Y. 2005) (allegation that defendant "rubbed up against plaintiff buttocks with his private part during the strip frisk" insufficient to state an Eighth Amendment claim); Davis v. Castleberry, 364 F. Supp.2d 319, 321 (W.D.N.Y. 2005) (correctional officer groped inmate's penis during pat frisk); Montero v. Crusie, 153 F. Supp.2d 368, 375 (S.D.N.Y. 2001)(repeated gropings); Gill v. Jones, 2001 WL 1346012 at (S.D.N.Y. Nov. 1, 2001)(defendant allegedly rubbed his penis against plaintiff's bare buttocks during a pat down); Duncan v. Keane, 95 Civ. 1090 (SHS), 1995 WL 649931 at *5-*6 (S.D.N.Y. Nov. 6, 1995) (corrections officer felt plaintiff's buttocks); Friedman v. Young, 702 F. Supp. 433, 434, 436 (S.D.N.Y. 1988); cf. Rodriquez v. McClenning, 399 F. Supp.2d 228, 236-37 (S.D.N.Y. 2005).

In this case, as in <u>Boddie</u>, the conduct allegedly endured by plaintiff -- namely, two instances of improper sexual contact, several inappropriate comments, and an allegedly unauthorized cell search -- although abhorrent, does not rise to the level of cruel and unusual punishment sufficient to sustain an Eighth Amendment claim.

Accordingly, I respectfully recommend that plaintiff's Eighth Amendment claim be dismissed.

> 2.  Plaintiff's Claim Regarding
>     the Sanction He Received
>     <u>During Computer Class</u>

Plaintiff also asserts a First Amendment retaliation claim and a Sixth Amendment claim for the "incident report" that he received as a result of attempting to write to an attorney during computer class regarding the alleged assaults by Rodriguez (Compl. ¶ 26).  Specifically, under his "statement of claims" plaintiff alleges

> Subsequent to filing [an] Administrative Remedy for the
> assault, the plaintiff suffered retaliation, in viola-
> tion of his 1st Amendment rights.  He was sanctioned[7]

---

[7]Plaintiff's complaint does not specify the sanction that he received for attempting to contact his attorney during computer class and his administrative grievance simply requests "(1) reversal of UDC findings, (2) lifting of all sanctions, and (3) reinstatement in the computer skills class" (Nov. 26, 2007 Grievance).  Dodrill, however, states in his denial of plaintiff's appeal that "[t]he sanction imposed, 90 days loss of commissary privileges, 60 days loss of telephone privileges
(continued...)

18

for attempting to notify his attorney of the assault, violating his 1st and 6th Amendment rights.

(Compl. at 2).

The defendants correctly note that plaintiff has no Sixth Amendment right to counsel in his contemplated civil proceeding, see generally Thomsen v. County of Erie New York, 203 F. App'x 381, 382 (2d Cir. 2006)(summary order), citing United States v. Coven, 662 F.2d 162, 176 (2d Cir. 1981), and, accordingly, construe these allegations as raising a claim that plaintiff's constitutional right of access to the courts was infringed when he was punished for attempting to contact an attorney during computer class.[8]  The defendants move to dismiss this claim, arguing that plaintiff was afforded sufficient access to the courts (Def. Mot. at 14).  Plaintiff's allegations, however, do not focus on his access to the courts but rather on the fact that he was sanctioned for engaging in allegedly protected activity -- i.e. attempting to communicate with an attorney regarding a

---

[7](...continued)
(suspended pending 180 days clear conduct) and change of quarters assignment, were not disproportionate to your misconduct" (Jan. 24, 2008 Admin. Resp.).

[8]The defendants treat plaintiff's allegations of a Sixth Amendment violation as raising a claim regarding his access to the courts but the right of access to the courts actually appears to arise under the Due Process clause.  See Schick v. Apker, 07 Civ. 5775 (SHS)(DF), 2009 WL 2016933 at *8 (S.D.N.Y. Mar. 5, 2009), citing Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997); see also Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).

grievance -- which plaintiff believes violates his First Amend-
ment rights.  Defendants have not, however, addressed plaintiff's
First Amendment retaliation claim (Def. Mot. at 14-15) and,
accordingly, this claim survives the motion to dismiss.

a.  <u>Access to the Courts</u>

The Supreme Court has held that

> The constitutional guarantee of due process of law
> has as a corollary the requirement that prisoners be
> afforded access to the courts in order to challenge
> unlawful convictions and to seek redress for violations
> of their constitutional rights.  This means that in-
> mates must have a reasonable opportunity to seek and
> receive the assistance of attorneys.  Regulations and
> practices that unjustifiably obstruct the availability
> of professional representation or other aspects of the
> right of access to the courts are invalid.

<u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>partially</u>
<u>overruled on other grounds by</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401
(1989); <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977) ("It is now
established beyond doubt that prisoners have a constitutional
right of access to the courts."); <u>Monsky v. Moraghan</u>, <u>supra</u>, 127
F.3d at 246; <u>Washington v. James</u>, 782 F.2d 1134, 1138 (2d Cir.
1986).  In <u>Schick v. Apker</u>, <u>supra</u>, 2009 WL 2016933 at *8, the
Honorable Debra Freeman, United States Magistrate Judge, ex-
plained the standard applicable to a prisoner's claim that he was
denied access to the courts

> An inmate's constitutional right of access . . .
> is limited in scope; the right extends only to the
> defense against criminal charges, challenges to the

inmate's conviction through direct appeal, applications for habeas corpus relief, and civil rights claims. Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) (citing Lewis v. Casey, 518 U.S. 343, 355 (1996)); see Page v. Lantz, 3:05CV1271 (MRK), 2007 WL 1834519 at *4 (D. Conn. June 25, 2007).  Moreover, in order to violate an inmate's right of access to the courts, a defendant's conduct must cause the inmate "actual injury," in that a legal action that he sought to pursue must have been "materially prejudiced" by the defendant's actions.  Smith v. O'Connor, 901 F. Supp. 644, 649 (S.D.N.Y. 1995); see also Lewis, 518 U.S. at 350 (noting need to show "actual injury"); Key v. Fischer, 05 Civ. 10461 (SHS) (GWG), 2007 WL 2522352 at *4 (S.D.N.Y. Sept. 6, 2007), report and recommendation adopted by, 2007 WL 2844958 (S.D.N.Y. Sept. 28, 2007). Further, as a pleading matter, the inmate must lay out a description of the purportedly-compromised underlying action in sufficient detail so that a court may "determine whether the 'arguable' nature of the underlying claim is more than hope." Christopher v. Harbury, 536 U.S. 403, 415-16 (2002); see Key, 2007 WL 2522352 at *5.

> Most importantly . . . the Constitution does not require that an inmate's access to the courts and to counsel be anything more than "reasonable." Smith, 901 F. Supp. at 648. . . .

See Lewis v. Casey, supra, 518 U.S. at 350-51 (1996) (the Constitution does not mandate any particular method of access to courts or counsel only "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."); Davis v. Goord, supra, 320 F.3d at 351; Monsky v. Moraghan, supra, 127 F.3d at 247; Zimmerman v. Seyfert, 9:03-CV-1389 (TJM), 2007 WL 2080517 at *31 (N.D.N.Y. July 19, 2007)("The cause of the injury must be inadequacy of the access."); Cancel v. Goord, 00 Civ. 2042 (LMM), 2001 WL 303713 at *4 (S.D.N.Y. Mar. 29, 2001); Davidson v. Scully, 81 Civ. 0390 (PKL)(HBP), 1999 WL

21

961775 at *4 (S.D.N.Y. Oct. 21, 1999)(inmate's access to courts and counsel "need not be more than reasonable"); Brown v. Brabazon, 95 CV 4183 (SJ), 1998 WL 177612 at *2-*3 (E.D.N.Y. Apr. 13, 1998); Jermosen v. Coughlin, 89 Civ. 1866 (RJW), 1995 WL 144155 at *4 (S.D.N.Y. March 30, 1995).  A plaintiff can demonstrate an "actual injury" by alleging, for example, "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of the deficiencies in the prison's legal assistance facilities, he could not have known, or that he was unable to file a complaint alleging actionable harm because the legal assistance program was so inadequate."  Page v. Lantz, supra, 2007 WL 1834519 at *3, quoting Lewis v. Casey, supra, 581 U.S. at 351.

In this case, plaintiff has not alleged that his access to the courts or to his counsel was impeded by the sanction that he received for attempting to write to counsel during computer class; to the contrary, plaintiff states that he was able to mail a copy of the letter that he drafted during computer class to counsel the following day (Compl. ¶ 28; Letter to Michael Weil, Esq., dated November 15, 2007, attached as Ex. 11 to the Compl.).  Nor has the plaintiff alleged that he was prevented from writing letters to counsel outside of computer class.  Moreover, plain-

tiff has not alleged that the defendants' alleged actions had any effect on plaintiff's ability to pursue the present action.[9]

Accordingly, I conclude that the defendants have not deprived plaintiff of "reasonable" access to the courts, and I recommend that this claim be dismissed.[10]

### b.  Due Process Claims

Plaintiff may also be raising a Due Process claim on the theory that he was deprived of Due Process by the procedures followed by the UDC when it sanctioned him for the computer class incident.  In his "statement of claims," plaintiff alleges, in conclusory fashion, that he "did not receive Due Process in

---

[9]Plaintiff also fails to state a claim for denial of his access to the courts regarding Rodriguez's alleged confiscation of his mail on December 13, 2007 (Compl. at ¶¶ 46, 49) because he only alleges one instance of mail tampering and, as discussed above, plaintiff fails to allege that he suffered any injury as a result of the alleged mail tampering.  See e.g. Davis v. Goord, supra, 320 F.3d at 351; Islam v. Goord, 05 Civ. 7502 (RJH), 2006 WL 2819651 at *7-*8 (S.D.N.Y. Sept. 29, 2006); Standley v. Lyder, 99 Civ. 4711 (GEL), 2001 WL 225035 at *2-*3 (S.D.N.Y. Mar. 7, 2001).

[10]The defendants also argue that plaintiff has failed to properly exhaust his administrative remedies with respect to this claim (Def. Mot. at 15-16).  See 42 U.S.C. § 1997e(a).  Although, plaintiff filed grievances with respect to this incident, in these grievances plaintiff asserted a Due Process claim with respect to the UDC hearing and did not assert a claim regarding denial of access to the courts.  The defendants argue that what they characterize as plaintiff's Sixth Amendment claim is, therefore, subject to dismissal.  Because I have concluded that plaintiff's complaint fails to state a claim for denial of access to the courts, I need not address this argument.

violation of his 14th Amendment rights" and in his December 19, 2007 grievance he alleges that he was deprived of Due Process because (1) he was only given 18 days in which to appeal the UDC's decision, (2) he was berated by Suarez regarding his appeal outside of the hearing room, and (3) the response to his appeal, signed by Cross, was actually forged by Suarez (Dec. 19, 2007 Appeal). The defendants also fail to address this claim in their motion to dismiss and, accordingly, it also survives this report and recommendation.

     3. First Amendment
        Retaliation Claims

     Plaintiff also alleges that his First Amendment rights were violated when he was punished for writing grievances regarding the aforementioned instances of sexual abuse.

     In order to prevail on a retaliation claim, a plaintiff bears the burden of proving, "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). "The Second Circuit has admonished district courts to approach prisoner retaliation

claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official -- even those otherwise not rising to the level of a constitutional violation -- can be characterized as a constitutionally proscribed retaliatory act.'" Bumpus v. Canfield, 495 F. Supp.2d 316, 325 (W.D.N.Y. 2007) quoting Dawes v. Walker, supra, 239 F.3d at 491.

With respect to the first prong, the allegations in plaintiff's complaint are sufficient to state a claim because "[i]t is well established that the filing of [a] prison grievance[] . . . [is a] constitutionally protected activit[y]." McClenton v. Menifee, 05 Civ. 2844 (JGK), 2006 WL 2474872 at *12 (S.D.N.Y. Aug. 22, 2006), citing Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) and Salahuddin v. Mead, 05 Civ. 8581 (MBM), 2002 WL 1968329 at *3 (S.D.N.Y. Aug. 26, 2002).

With respect to the second prong, the Second Circuit has held that "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Dawes v. Walker, supra, 239 F.3d at 493; Davis v. Goord, supra, 320 F.3d at 353. The Second Circuit also explained that

> This objective inquiry is "not static across contexts," but rather must be "tailored to the different circumstances in which retaliation claims arise." Thaddeus-X, 175 F.3d at 398. "Prisoners may be re-

> quired to tolerate more than public employees, who may
> be required to tolerate more than average citizens,
> before a [retaliatory] action taken against them is
> considered adverse."  Id.

Dawes v. Walker, supra, 239 F.3d at 493; accord Davis v. Goord,

supra, 320 F.3d at 353; McClenton v. Menifee, supra, 2006 WL

2474872 at *12; Pledger v. Hudson, 99 Civ. 2167 (LTS)(THK), 2005

WL 736228 at *5 (S.D.N.Y. Mar. 31, 2005).  Plaintiff's complaint,

liberally construed, appears to allege that the defendants

retaliated against him by (1) conducting an unauthorized cell

search, (2) threatening to place him in the SHU, and (3) sanc-

tioning him for writing a letter to his attorney, during computer

class, regarding the alleged sexual assaults by Rodriguez.[11]

## a.  Retaliatory Cell Search

Plaintiff alleges that on October 12, 2007, Rodriguez

approached plaintiff and said "you guys like to write me up, so

I'll give you more cop-outs to do that" and then proceeded to

search plaintiff's cell (Compl. ¶ 6).  Although, plaintiff's

complaint does not expressly allege that the cell search was

conducted in retaliation for his protected speech, the grievance

plaintiff filed with respect to this cell search states "Officer

_____

[11]As indicated above, the defendants do not address
plaintiff's allegation that the defendants violated his First
Amendment rights by issuing him an incident report in retaliation
for engaging in the allegedly protected activity of writing a
letter to his attorney.  Accordingly, this claim survives this
motion to dismiss.

J. Rodriguez retaliations are a consequence for reporting his sexual assault crime against me" (Oct. 14, 2007 Grievance). Thus, liberally construing the complaint in conjunction with its attachments, I interpret plaintiff's complaint as asserting a claim that Rodriguez searched his cell in retaliation for plaintiff's protected First Amendment speech.

Several other courts in this circuit have addressed similar claims, however, and found that a cell search would not deter similarly situated inmates from exercising their constitutional rights because prisoners have no reasonable expectation of privacy in their prison cells, see Hudson v. Palmer, 468 U.S. 517, 530 (1984), and are well aware that their cells can be searched at any time.  See e.g. Bumpus v. Canfield, supra, 495 F. Supp.2d at 325; H'Shaka v. Drown, 9:03-CV-937 (LEK/RFT), 2007 WL 1017275 at *14 (N.D.N.Y. Mar. 30, 2007); Battice v. Phillip, CV-04-669 (FB)(LB), 2006 WL 2190565 at *7 (E.D.N.Y. Aug. 2, 2006) (collecting cases); Rodriguez v. McClenning, supra, 399 F. Supp.2d at 239; Freeman v. Goord, 02 Civ. 9033 (PKC), 2005 WL 3333465 at *5 (S.D.N.Y. Dec. 7, 2005); Salahuddin v. Mead, supra, 2002 WL 1968329 at *5-*6.  In this case, no contraband was discovered in plaintiff's cell, and plaintiff was not disciplined as a result of the cell search.  Moreover, the record clearly indicates that plaintiff was not deterred by this incident because he continued to file grievances after this incident.

27

Accordingly, I conclude that plaintiff has failed to state a First Amendment retaliation claim with respect to the cell search.

    b.  <u>Placement in the SHU</u>

Plaintiff also alleges that on November 19, 2007 and November 26, 2007, defendants Gonzalez and Canales "threatened retaliation in the form of incident reports and placement in the Special Housing Unit for [plaintiff's] exercis[e] [of] his 1st Amendment right to redress grievances" (Compl. ¶¶ 34, 40). Plaintiff also alleges that he was subsequently issued an incident report by defendant Galleta accusing him of insolence, pursuant to which he was placed in the SHU for four days (Compl. ¶ 77).

First, the one alleged threat made by Gonzalez and Canales, viewed in isolation, does not constitute a sufficient adverse action to sustain a retaliation claim. <u>See</u> <u>e</u>.<u>g</u>. <u>Smith v. Christopher</u>, 9:06-CV-1196 (LEK/DEP), 2008 WL 4283519 at *13 (N.D.N.Y. 2008), <u>citing</u> <u>Bartley v. Collins</u>, 05 Civ. 10161 (RJH), 2006 WL 1289256 at *6 (S.D.N.Y. May 10, 2006) (defendants' threats that "we going to get you, you better drop the suit," do not rise to the level of adverse action); <u>Islam v. Goord</u>, <u>supra</u>, 2006 WL 2819651 at *5; <u>Alicea v. Howell</u>, 387 F. Supp.2d 227, 237 (W.D.N.Y. 2005); <u>Pledger v. Hudson</u>, <u>supra</u>, 2005 WL 736228 at *5

("Threats made to an inmate, without more, do not rise to the level of a constitutional violation."); Cruz v. Hillman, 01 Civ. 4169 (DAB)(DF), 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002).

Plaintiff's allegation that he was ultimately placed in the SHU may, however, constitute a sufficient adverse action to state a claim for retaliation.  See e.g. Sharpe v. Taylor, supra, 2009 WL 1743987 at *10 (defendant's threat that he would place inmate in SHU followed by defendant's transfer of plaintiff to the SHU the next day was sufficient to sustain a retaliation claim); see also Gill v. Pidlypchak, supra, 389 F.3d at 384 (transfer of an inmate to keeplock housing constitutes adverse action for purposes of a section 1983 retaliation claim). Moreover, in this case plaintiff's being sent to the SHU was particularly likely to deter plaintiff from engaging in protected speech in the future because plaintiff alleges that he was placed in a filthy cell covered in blood, feces and other "bodily fluids."

The defendants argue, however, that plaintiff has not alleged a causal connection between the protected activity and the punishment.  To allege a causal connection, plaintiff must allege facts suggesting that the protected conduct was a "'substantial or motivating factor' in the prison officials' decision to take action against the plaintiff."  Smith v. Christopher, supra, 2008 WL 4283519 at *13, quoting Mount Healthy City Sch.

29

Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007); Dawes v. Walker, supra, 239 F.3d at 492.  Facts suggesting an improper motive may be circumstantial and can include "(1) temporal proximity between the protected activity and the alleged retaliatory act; (2) the plaintiff's prior good disciplinary record; (3) the plaintiff's vindication at his disciplinary hearing; and (4) the defendants' statements regarding their motive for the discipline."  Chavis v. Kienert, 9:03-CV-0039 (FJS)(RFT), 2005 WL 2452150 at *16 (N.D.N.Y. Sept. 30, 2005), citing Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995); accord Espinal v. Goord, 558 F.3d 119, 129-30 (2d Cir. 2009); Bartley v. Collins, supra, 2006 WL 1289256 at *6.

        In this case, plaintiff has failed to allege a causal connection between his protected speech and Galleta's decision to place him in the SHU.  Indeed, plaintiff's complaint is facially deficient because he does not allege that Galleta was aware that plaintiff had engaged in the protected activity of filing a grievance nor does he allege that Galleta placed him in the SHU for retaliatory reasons.  Rather, plaintiff alleges only that Gonzalez threatened to place plaintiff in the SHU in retaliation for filing grievances and then, six months later, Galleta caused plaintiff to be placed in the SHU.  Although this interval alone does not defeat an inference of causation, see Espinal v. Goord,

558 F.3d 119, 129-30 (2d Cir. 2009)(six month interval between protected activity and retaliation gives rise to a question of fact regarding retaliatory animus), the absence of other factual allegations does.  Plaintiff does not allege that Gonzalez conspired with Galleta nor does plaintiff allege that Gonzalez communicated to Galleta his desire to have plaintiff placed in the SHU.  Plaintiff also does not allege that the incident report for which he was placed in the SHU was fraudulent or inaccurate and, based on the limited record here, it does not appear that plaintiff filed a grievance with respect to his placement in the SHU.[12]

---

[12]Plaintiff has not presented circumstantial evidence of improper motive because he does not identify which grievance forms the basis of his retaliation claim and, thus, it is impossible to evaluate the temporal proximity between the protected activity and the alleged retaliatory act.  Indeed, the only mention of Canales and Gonzalez, other than the aforementioned threat, is in the context of the Hot Trash incident.  Plaintiff alleges that Canales told him not to touch the Hot Trash and yet plaintiff was subsequently disciplined for failing to assist Suarez with the Hot Trash (Staff Request at 1-2).  Gonzalez's connection to this incident is minimal; he appears to have been present on November 19, 2007 when plaintiff attempted to clarify the events surrounding the Hot Trash incident with Canales.  Plaintiff does not allege that Galleta has any connection with this event.  Moreover, plaintiff does not appear to have filed a grievance against Canales, Galleta, or Gonazalez with respect to this incident.  Accordingly, with respect to the factors identified in Colon v. Coughlin, supra, 58 F.3d at 872-73, (1) it is impossible to evaluate the temporal proximity between any protected activity and the adverse action, (2) plaintiff does not appear to have been vindicated with respect to the Hot Trash incident or the insubordination which resulted in his SHU placement at any subsequent disciplinary hearing and (3) plaintiff does not make any allegations regarding
(continued...)

31

Thus, there is no basis for inferring that Galleta's actions are connected in any way to Gonzalez's threat.

4.  Personal Involvement

The defendants argue that defendants Sadowski, Desai, Gregg, Dodrill, Watts, Cross, Hicks, Ortiz, and Suarez were not personally involved in the alleged constitutional violations and, accordingly, cannot be held liable under Bivens (Def. Mot. 7-9).[13]

"Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual ac-tions, has violated the Constitution." Ashcroft v. Iqbal, supra, 129 S.Ct. at 1948; Thomas v. Ashcroft, 470 F.3d 491, 496-97 (2d Cir. 2006); Barbera v. Smith, 836 F.2d 96, 99 (2d Cir. 1987); Ellis v. Blum, 643 F.2d 68, 85 (2d Cir. 1981); Black v. United

---

[12](...continued)
his disciplinary record or (4) allege that the defendants made any statements regarding their motive for the discipline.

[13]The defendants have not, however, moved to dismiss the claims against Arries, Burgos, Dowd, Martinez, and Pearson even though many of these defendants are only mentioned in the caption of the complaint or briefly mentioned as having been notified of Gonazalez's assaults (Compl. ¶¶ 25, 32, 40).  Nor have the defendants moved to dismiss the claims against Gomez, N'Diaye, Wade-Jones, Williams, or John/Jane Doe even though the only allegation against these defendants is that they were "notified of the sexual assaults and sexual harassment through reports and appeals" (Compl. ¶ 90).

States, 534 F.2d 524, 527-28 (2d Cir. 1976); see also Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003) ("Evidence of a supervisory official's 'personal involvement' in the challenged conduct is required[]" to sustain a Section 1983 claim.); Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).[14]  The Second Circuit has held that supervisory liability for a state official under § 1983 can be shown if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

---

[14]Although some of the cases cited in the text involve constitutional claims brought against state officials under 42 U.S.C. § 1983, "Bivens claims are treated as analogous to claims under 42 U.S.C. § 1983 and incorporate the same law." Nunez v. Hasty, 04-CV-1282 (JG)(LB), 2006 WL 2589254 at *7 (E.D.N.Y. Sept. 8, 2006), citing Butz v. Economou, 438 U.S. 478, 504 (1978) (no distinction for purposes of sovereign immunity between Bivens and § 1983 claims) and Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) ("federal courts typically incorporate § 1983 law into Bivens actions").

Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003), citing
Colon v. Coughlin, supra, 58 F.3d at 873; Avent v. New York, 157
F. App'x 375, 377 (2d Cir. 2005)(summary order); Richardson v.
Goord, 347 F.3d 431, 435 (2d Cir. 2003); Lewis v. Fischer,
08-CV-3027 (JG)(LB), 2009 WL 689803 at *3 (E.D.N.Y. Mar. 12,
2009); Benitez v. Locastro, 9:04-CV-423 (NAM), 2008 WL 4767439 at
*12 (N.D.N.Y. Oct. 29, 2008); Johnson v. Wright, 234 F. Supp.2d
352, 363 (S.D.N.Y. 2002) ("the second example listed in Colon --
permitting supervisory liability where a 'defendant, after being
informed of the violation through a report or appeal, failed to
remedy the wrong,' -- should not be too broadly construed");
Morris v. Eversley, 205 F. Supp.2d 234, 241-42 (S.D.N.Y. 2002).
"Thus, to impose supervisory liability, a prisoner must allege
that the official had actual or constructive notice of the
unconstitutional practices and demonstrated gross negligence or
deliberate indifference by failing to act." Merriwether v.
Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989).

### a.   Defendants Sadowski and Desai

          Plaintiff's complaint contains no mention of defendants
Sadowski or Desai other than in the caption of the complaint.
Where, as here, a complainant names a defendant in the caption
but the complaint contains no substantive allegation against the
defendant, dismissal of the complaint is appropriate.   Anderson

v. Romano, 08 Civ. 559 (JSR)(KNF), 2009 WL 602965 at *6 (S.D.N.Y. Mar. 6, 2009); Sharp v. State of New York, 06-CV-5194 (JFB)(ETB), 2007 WL 2480428 at *5 (E.D.N.Y. Aug. 28, 2007); Vaval v. Zenk, 04-CV-4548 (CBA), 2007 WL 778429 at *5 (E.D.N.Y. Mar. 13, 2007); Goss v. Fairfield Hous. Auth., 3:03CV0935 (WIG), 2006 WL 314548 at *1 (D. Conn. Feb. 9, 2006); Burnell v. Whidden, 3:05CV825 (MRK), 2005 WL 2739085 at *4 (D. Conn. Oct. 19, 2005); Iwachiw v. N.Y. State Dep't of Motor Vehicles, 299 F. Supp.2d 117, 121 (E.D.N.Y. 2004), aff'd, 396 F.3d 525 (2d Cir. 2005); Dove v. Fordham Univ., 56 F. Supp.2d 330, 335 (S.D.N.Y. 1999), aff'd, 210 F.3d 354 (2d Cir. 2000); Sierra v. United States, 97 Civ. 9329 (RWS), 1998 WL 599715 at *7 (S.D.N.Y. Sept. 10, 1998); Cuoco v. Hershberger, 93 Civ. 2806 (AGS), 1996 WL 648963 at *4 (S.D.N.Y. Nov. 6, 1996); Thomas v. Beth Israel Hosp. Inc., 710 F. Supp. 935, 942 (S.D.N.Y. 1989); Morabito v. Blum, 528 F. Supp.252, 262 (S.D.N.Y. 1981); Gutierrez v. Vergari, 499 F. Supp. 1040, 1052 (S.D.N.Y. (1980); Holloway v. Carey, 482 F. Supp. 551, 553 (S.D.N.Y. 1979).

     Accordingly, I respectfully recommend the dismissal of plaintiff's claims against Sadowski and Desai for failure to state a claim under Bivens.

b.  Defendants Gregg,
Dodrill, Watts & Cross

Plaintiff seeks to hold Gregg, Dodrill, Watts, and Cross liable under Bivens for denying:  (1) his appeal of the sanction issued by the UDC for unauthorized use of a computer,[15] and (2) his grievance regarding Rodriguez's sexual assault[16] (Compl. ¶¶ 38, 48, 51, 53, 57-8, 61-2, 65, 69, 73, 76).  Plaintiff also seeks to hold Dodrill and Watts liable for denying his

_____

[15]Plaintiff states, in conclusory fashion, that his appeal of the computer class incident report "was denied and the plaintiff was sanctioned for exercising his 1st and Sixth Amendment rights" (Compl. ¶ 45).  Although plaintiff does not specify which defendant violated his rights by denying his appeal, it appears from the exhibits as if Cross, Dodrill and Watts all denied plaintiff's appeal from the UDC decision (see Dec. 4 2007 Admin Resp.; Jan. 24, 2008 Admin. Resp.;  Admin. Resp., dated April 2, 2008 ("April 2, 2008 Admin. Resp.), attached as Ex. 39 to the Compl.).  Plaintiff also states that his appeal of the "sanction [he] received for [attempting to] access[] the courts was denied by Watts" (Compl. ¶ 76).

[16]Plaintiff's Complaint specifically alleges that Dodrill and Gregg denied plaintiff's grievances regarding Rodriguez's alleged harassment (Compl. ¶¶ 8, 73).  Plaintiff also alleges that defendants Cross, Dodrill, and Watts received copies of plaintiff's grievances and, accordingly, were "notified" of the alleged unconstitutional conduct (Compl. ¶¶ 38, 48, 51, 53, 55, 57, 58, 61, 62, 65, 69, 73).  The exhibits attached to the complaint, however, indicate that Gregg, Dodrill, Watts and Cross received and rejected plaintiff's various grievances regarding Rodriguez's harassment (Admin. Resp., dated October 3, 2007, attached as Ex. 3 to the Compl.; Admin Resp., dated October 24, 2007, attached as Ex. 6 to the Compl.; Admin. Resp., dated January 25, 2008, attached as Ex. 31 to the Compl.; Admin. Resp., dated March 24, 2008, attached as Ex. 40 to the Compl.; Admin. Resp., dated March 4, 2008, attached as Ex. 41 to the Compl.; Admin. Resp., dated July 3, 2008, attached as Ex. 42 to the Compl.).

grievance regarding the October 7, 2007 search of his cell (see
Response of D. Scott Dodrill, dated March 24, 2008, attached as
Ex. 40 to the Compl.; Admin. Resp., dated May 28, 2008, attached
as Ex. 44 to the Compl.).  Because I have concluded that plain-
tiff has failed to state claims (1) that his Eighth Amendment
rights were violated or (2) that his First Amendment rights were
violated when his cell was searched without authorization,
plaintiff's supervisory liability claims against defendants
Gregg, Dodrill, Watts and Cross cannot be predicated upon the
denial of grievances related to either of these claims.  See e.g.
Benitez v. Locastro, supra, 2008 WL 4767439 at *12; Battice v.
Phillip, supra, 2006 WL 2190565 at *9.  Accordingly, plaintiff's
only claim with respect to Cross, Dodrill, Gregg and Watts is
that these defendants violated his constitutional rights by
failing to grant his appeal of the UDC decision, thereby (1)
upholding the allegedly unconstitutional sanctions he received
for writing a letter to his attorney during computer class and
(2) ignoring the Due Process violations which form the basis of
his appeal.  The defendants move to dismiss these claims only on
the ground that plaintiff has failed to allege that Gregg,
Dodrill, Watts and Cross were personally involved in these
constitutional violations and therefore, for purposes of this
motion, I assume that plaintiff's allegations are sufficient to
state Due Process and First Amendment claims (Def. Mot. at 9).

37

In Johnson v. Wright, supra, 234 F. Supp.2d at 363-64,

the Honorable Gabriel W. Gorenstein, United States Magistrate

Judge, explained the standard for holding prison officials liable

for failing to act on allegations of constitutional violations:

> [A] number of courts have held that "it is
> well-established that an allegation that an official
> ignored a prisoner's letter of protest and request for
> an investigation of allegations made therein is insuf-
> ficient to hold that official liable for the alleged
> violations." Greenwaldt v. Coughlin, 1995 WL 232736,
> at *4 (S.D.N.Y. Apr. 19, 1995) (citations omitted);
> accord Rivera v. Goord, 119 F. Supp.2d 327, 344
> (S.D.N.Y. 2000) (allegations that inmate wrote to
> prison officials and was ignored insufficient to hold
> those officials liable under section 1983); Woods v.
> Goord, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998)
> ("Receiving letters or complaints . . . does not render
> [prison officials] personally liable under § 1983.");
> Watson v. McGinnis, 964 F. Supp. 127, 130 (S.D.N.Y.
> 1997) ("The law is clear that allegations that an
> official ignored a prisoner's letter are insufficient
> to establish liability.") (citations omitted).  As one
> court noted, "if mere receipt of a letter or similar
> complaint were enough, without more, to constitute
> personal involvement, it would result in liability
> merely for being a supervisor, which is contrary to the
> black-letter law that § 1983 does not impose respondeat
> superior liability." Walker v. Pataro, 2002 WL 664040,
> at *12 (S.D.N.Y. Apr. 23, 2002) (emphasis in original).
> Personal involvement will be found, however, where a
> supervisory official receives and acts on a prisoner's
> grievance or otherwise reviews and responds to a pris-
> oner's complaint.  See, e.g., Ramos v. Artuz, 2001 WL
> 840131, at *8-*10 (S.D.N.Y. July 25, 2001) (personal
> liability where prison official "sent plaintiff numer-
> ous letters containing some explanation or justifica-
> tion concerning the issues raised by plaintiff") . . .
> .

Accord Dean v. Lantz, 3:08cv00749 (DJS), 2009 WL 2151173 at *6

(D. Conn. Jul. 17, 2009)("the fact that a supervisory official

ignored a prisoner's letter of protest or referred the letter to

other officials for response does not establish the requisite personal involvement" for liability); Bumpus v. Canfield, supra, 495 F. Supp.2d at 322; Pelletier v. Armstrong, 3:99cv1559 (HBF), 2007 WL 685181 at *6-*7 (D. Conn. Mar. 2, 2007); Lyerly v. Phillips, 04 Civ. 4904 (PKC), 2005 WL 1802972 at *7 (S.D.N.Y. July 29, 2005); Atkins v. County of Orange, 251 F. Supp.2d 1225, 1234 (S.D.N.Y. 2003); Walker v. Pataro, 99 Civ. 4607 (GBD)(AJP), 2002 WL 664040 at *12 (S.D.N.Y. Apr. 23, 2002); cf. Guarneri v. West, 518 F. Supp.2d 514, 519 (W.D.N.Y. 2007) (finding plaintiff's allegations that the prison superintendents "created or maintained policies that allowed the alleged constitutional violations to occur, and that they were notified through letters from plaintiff of the violations but failed to remedy them" sufficient to withstand a motion to dismiss).

Thus, a supervisor's decision to refer a prisoner's letter to his subordinate for investigation does not constitute personal involvement for purposes of Bivens liability.  See e.g. Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (warden who referred letter to subordinate not personally involved); Sumpter v. Skiff, 05-cv-868 (TJM), 2008 WL 4518996 at *8 (N.D.N.Y. Sept. 30, 2008); Harnett v. Barr, 538 F. Supp.2d 511, 524-25 (N.D.N.Y. 2008), citing Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs., 491 F. Supp.2d 342, 347 (W.D.N.Y. 2007); Rivera v. Pataki, supra, 2005 WL 407710 at *23; Liner v. Goord, 310 F.

Supp.2d 550, 555 (W.D.N.Y. 2004); <u>Leevon v. Goord</u>, 99-CV-6208, 2003 WL 22384787 at *8 (W.D.N.Y. Sept. 4, 2003) (Selsky's actions as Goord's designee do not provide a basis for holding Goord liable in Section 1983 action).   Nevertheless, courts in this Circuit have held defendants liable when their involvement extends beyond the mere receipt of letters to providing detailed responses defending the institution or explaining the treatment. <u>Woods v. Goord</u>, 01 Civ. 3255 (SAS), 2002 WL 731691 at *8-*9 (S.D.N.Y. Apr. 23, 2002) (dismissing claims against supervisor who just referred plaintiff's letter to his subordinates but declining to dismiss the claims against subordinate defendant who reviewed and responded in detail to plaintiff's letters request-ing medical treatment), <u>citing</u> <u>Ramos v. Artuz</u>, 00 Civ. 0149 (LTS)(HBP), 2001 WL 840131 at *9-*10 (S.D.N.Y. Jul. 25, 2001).

Courts in this Circuit are divided, however, regarding whether a supervisor who reviews and ultimately denies a griev-ance can be considered personally involved in the unconstitu-tional act underlying the grievance.   <u>Compare</u> <u>Atkinson v. Selsky</u>, 03 Civ. 7759 (LAK), 2004 WL 2319186 at *1 (S.D.N.Y. Oct. 15, 2004)(denial of a grievance is sufficient personal involvement to support a claim), <u>citing</u> <u>Williams v. Smith</u>, 781 F.2d 319, 323 (2d Cir. 1986); <u>Lewis v. Fischer</u>, <u>supra</u>, 2009 WL 689803 at *4 (same); <u>Benitez v. Locastro</u>, <u>supra</u>, 2008 WL 4767439 at *13 (same); <u>Islam v. Fischer</u>, 07 Civ. 3225 (PKC), 2008 WL 110244 at *3 (S.D.N.Y.

Jan. 9, 2008)(same); <u>Rodriquez v. Hagadorn</u>, 04-CV-6188 (JTE),
2004 WL 1529223 at *1-*2 (W.D.N.Y. June 24, 2004) (same); <u>Wil-
liams v. Koenigsmann</u>, 03 Civ. 5267 (SAS), 2004 WL 315279 at *5
(S.D.N.Y. Feb. 18, 2004)(same); <u>Walker v. Pataro</u>, 99 Civ. 4607
(GBD)(AJP), 2002 WL 664040 at *13 (S.D.N.Y. Apr. 23, 2002)(same),
<u>with</u> <u>Chambers v. Wright</u>, 05 Civ. 9915 (WHP), 2007 WL 4462181 at
*3 (S.D.N.Y. Dec. 19, 2007)(denial of a grievance is insufficient
personal involvement to support a claim); <u>Manley v. Mazzuca</u>, 01
CV 5178 (KMK), 2007 WL 162476 at *10-*11 (S.D.N.Y. Jan. 19, 2007)
(same); <u>McClenton v. Menifee</u>, <u>supra</u>, 2006 WL 2474872 at *10
(same); <u>Madison v. Mazzuca</u>, 02 Civ. 10299 (RWS), 2004 WL 3037730
at *10 (S.D.N.Y. Dec. 30, 2004)(same); <u>Joyner v. Greiner</u>, 195 F.
Supp.2d 500, 506 (S.D.N.Y. 2002)(same); <u>Thompson v. New York</u>, 99
Civ. 9875 (GBD)(MHD), 2001 WL 636432 at *7 (S.D.N.Y. Mar. 15,
2001)(same); <u>see also</u> <u>Saxon v. Attica Med. Dept.</u>, 468 F. Supp.2d
480, 483 (W.D.N.Y. 2007) (recognizing a division in the case
law); <u>Williamson v. Goord</u>, 9:02-CV-00521 (GLS)(GHL), 2006 WL
1977438 at *22 n.125 (N.D.N.Y. July 11, 2006).

        Some courts have attempted to harmonize this conflict
by applying the same standard to both letters and grievances,
<u>i.e.</u> finding personal involvement only when the supervisor's
response is detailed and specific.  See <u>Brooks v. Chappius</u>, 450
F. Supp.2d 220, 226 (W.D.N.Y. 2006); <u>McKenna v. Wright</u>,
01-CV-6571 (HB), 2004 WL 102752 at *5-*6 (S.D.N.Y. Jan. 21,

2004)(recognizing that some cases have held that liability will only be imposed if "the supervisor's response is detailed and specific"), aff'd, 386 F.3d 432 (2d Cir. 2004); see also Charles v. N.Y. State Dep't of Corr. Servs., 9:07-CV-1274 (DNH), 2009 WL 890548 at *6 (N.D.N.Y. Mar. 31, 2009)(drawing a distinction between a supervisor who simply affirms the denial of a grievance and a supervisor who "receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint"), citing Warren v. Goord, 476 F. Supp.2d 407, 413 (S.D.N.Y. 2007); Pugh v. Goord, 571 F. Supp.2d 477, 515 (S.D.N.Y. 2008); Williams v. Fisher, 02 Civ. 4558 (LMM), 2003 WL 22170610 at *10 (S.D.N.Y. Sept. 18, 2003).

Other courts in this Circuit have applied a different standard and found personal involvement only when the grievance alleges an "ongoing constitutional violation that the supervisory official who reviews the grievance can remedy directly." Vega v. Artus, 610 F. Supp.2d 185, 198 (N.D.N.Y. 2009), quoting Hall v. Leclaire, 06 Civ. 946 (GBD)(JCF), 2007 WL 1470532 at *10 (S.D.N.Y. May 22, 2007), accepted in part and rejected in part on other grounds, 2007 WL 2815624 (S.D.N.Y. Sept. 24, 2007); accord Dallio v. Hebert, 9:06-CV-0118 (GTS)(GHL), 2009 WL 2258964 at *4 (N.D.N.Y. Jul. 28, 2009); Rahman v. Fisher, 607 F. Supp.2d 580, 585 (S.D.N.Y. 2009) ("[r]eceiving post hoc notice does not constitute personal involvement in the unconstitutional activ-

ity"); <u>Odom v. Calero</u>, 06 Civ. 15527 (LAK)(GWG), 2008 WL 2735868
at *7 (S.D.N.Y. Jul. 10, 2008); <u>Harnett v. Barr</u>, <u>supra</u>, 538 F.
Supp.2d at 524-25 ("If the official is confronted with a viola-
tion that has already occurred and is not ongoing, then the
official will not be found personally responsible for failing to
remedy a violation." (internal citations omitted)); <u>Young v.
Kihl</u>, 720 F. Supp. 22, 23 (W.D.N.Y. 1989).

    Applying these principles to Gregg, Dodrill, Watts and
Cross yields the following results.

### i.  <u>Defendant Gregg</u>

    The only allegation in the Complaint concerning Gregg
is the claim that "plaintiff filed administrative remedy request
No. 470838-F1 regarding the harassment by defendant Rodrigeuz . .
. .  It was rejected on October 24 by defendant Gregg" (Compl. ¶
9; <u>see</u> <u>also</u> Rejection Notice -- Administrative Remedy, dated
October 24, 2007, attached as Ex. 6 to the Compl.).  As discussed
above, plaintiff's complaint does not state an Eighth Amendment
claim and Greggs cannot, therefore, be liable for rejecting
plaintiff's grievance alleging an Eighth Amendment violation.
Moreover, based on the exhibits attached to the complaint, it
does not appear as if Gregg received a grievance regarding the
UDC decision or was personally involved, in any way, in either of
plaintiff's remaining claims.

Accordingly, plaintiff's supervisory liability claims against Gregg should be dismissed.

### ii.   Defendants Dodrill & Watts

Although the complaint arguably alleges a First Amendment claim, such a claim is not even suggested in any of plaintiff's grievances.  Accordingly, Dodrill and Watts were not personally involved in any alleged First Amendment violation because such a violation was never even called to their attention as required by Colon v. Coughlin, supra, 58 F.3d at 873; accord Hernandez v. Keane, supra, 341 F.3d at 145.

With regard to plaintiff's Due Process claims, however, Dodrill and Watts reviewed and responded, in depth, to plaintiff's grievances alleging that his Due Process rights had been violated (see Jan. 24, 2008 Admin. Resp.; April 2, 2008 Admin. Resp.).  It is unclear from the present record whether these defendants undertook their own investigation or relied entirely on the UDC decision in denying plaintiff's appeal.  Nevertheless, because Dodrill and Watts personally signed statements denying plaintiff's appeals, I believe that it is appropriate to assume that they engaged in a meaningful and purposeful review of the grievances and did not merely "rubber stamp" the work of others. See Islam v. Fischer, supra, 2008 WL 110244 at *3.  I believe it is inappropriate to assume that the New York State Department of

44

Correctional Services has created a grievance review procedure that mechanically and thoughtlessly endorses the result reached below; the existence of a mechanism for review implies that there is a critical analysis of the prior proceeding.  Moreover, I cannot say that Dodrill as Regional Director is not partially responsible for the conduct of prison disciplinary hearings.  See Williams v. Smith, supra, 781 F.2d at 324.  Accordingly, based on the limited evidence in the record, I conclude that the responses issued by Dodrill and Watts were sufficiently detailed and specific to withstand a motion to dismiss under the standard expressed in Brooks v. Chappius, supra, 450 F. Supp.2d at 226, and McKenna v. Wright, supra, 2004 WL 102752 at *5-*6.

It also appears as if Dodrill and Watts could have mitigated or remedied the adverse effects of the alleged Due Process violations by vacating the sentence imposed upon the plaintiff at the UDC disciplinary hearing.  See Young v. Kihl, supra, 720 F. Supp. at 23.  Thus, because the Due Process viola-tions could have been remedied by Dodrill and Watts there appears to be a plausible basis for finding personal involvement under the standard expressed in Harnett v. Barr, supra, 538 F. Supp.2d at 524-25,  Odom v. Calero, supra, 2008 WL 2735868 at *7, Rahman v. Fisher, supra, 607 F. Supp.2d at 585, and Vega v. Artus, supra, 610 F. Supp.2d 198.

At this early pleading stage, without the benefit of any discovery or other information regarding the actions taken by Dodrill and Watts to investigate plaintiff's Due Process claims, I submit that the most prudent course is to deny defendants' motion to dismiss for lack of personal involvement to permit the development of a more complete factual record.

### iii.   <u>Defendant Cross</u>

Plaintiff also seeks to hold Cross liable for denying his November 26, 2007 grievance (Compl. ¶ 36).

The exhibits attached to the Complaint indicate that Cross never received a grievance alleging that plaintiff had been engaged in a protected activity during computer class and, accordingly, Cross can not be said to have been personally involved in the alleged First Amendment violation because he never even received notice of such an alleged violation.  In addition, the November 26, 2007 grievance that plaintiff pre-sented to Cross argued only that he was entitled to relief because defendant Suarez held a grudge against plaintiff due to the Hot Trash incident and treated him unfairly at the hearing. This grievance does not contain the allegations in plaintiff's December 19, 2007 Grievance that his Due Process rights were violated when (1) he received only 18 days in which to appeal his sanction, (2) Suarez attempted to convince him not to appeal, and

(3) Suarez forged Cross' denial of his appeal.  Thus, Cross was never informed of these alleged constitutional violations and he cannot, therefore, be considered personally involved in plaintiff's Due Process claim under even the most liberal standard.[17]

Accordingly, I recommend that Cross' motion to dismiss the claims against him for lack of personal involvement be granted.

### c.  Defendant Ortiz

Plaintiff seeks to hold defendant Ortiz liable because Ortiz discussed with plaintiff his allegations against Rodriguez and delivered the incident report involving the computer class incident to plaintiff (Compl. ¶ 27; Plaintiff's notes at 11, attached as Ex. 1 to the Compl.).  Ortiz moves to dismiss this claim because plaintiff has failed to allege his personal involvement in any of the constitutional violations.

First, as indicated above, I have already determined that plaintiff's complaint fails to state an Eighth Amendment claim based on Rodriguez's alleged groping of plaintiff.  Therefore, whether or not Ortiz's conduct constitutes personal involvement, he is also entitled to the dismissal of this claim.

---

[17]In addition, plaintiff's allegation that Suarez forged Cross' denial of plaintiff's grievance also appears to undermine any claim that Cross was personally involved in the alleged constitutional violations.

Second, Ortiz's delivery of the incident report to plaintiff is insufficient to hold him liable for any alleged constitutional violations which occurred during the computer class or for any alleged Due Process violations which occurred at the subsequent hearing.  At most, this allegation suggests only that Ortiz was aware of the computer class incident, but does not suggest any role in any constitutional violation or even any role in reviewing any complaint or grievance.  See e.g. Johnson v. Wright, supra, 234 F. Supp.2d at 364 ("Mere awareness of a constitutional violation . . . is insufficient to impose liability."); accord Benitez v. Locastro, supra, 2008 WL 4767439 at *13; Vaval v. Zenk, supra, 2007 WL 778429 at *6; Morrison v. Johnson, 1:01-CV-636 (RFT), 2006 WL 2811802 at *20 (N.D.N.Y. Sept. 28, 2006) ("knowledge alone is insufficient to establish any of the elements of personal involvement"); see generally Williams v. Smith, supra, 781 F.2d at 324 ("The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing.").

Accordingly, I recommend that plaintiff's claims against Ortiz be dismissed.

d.  <u>Defendant Hicks</u>

Plaintiff bases his First Amendment claim against Hicks on the sanctions that he received as a result of attempting to contact his attorney during computer class.  The defendants argue, however, that "the complaint does not assert that Hicks . . . w[as] aware of the intended recipient of plaintiff's letter, and therefore has failed to allege personal involvement" (Def. Mot. at 8).  Although defendants characterize this argument as being based on a lack of personal involvement, defendants are really arguing that plaintiff has failed to allege all the elements of a First Amendment claim against Hicks.

Plaintiff's only allegation is that "Hick[s] issued plaintiff an incident report when the plaintiff was typing a rough draft of a letter to his attorney" (Compl. ¶ 26).  This bare allegation does not suffice to state a First Amendment claim because plaintiff has not alleged that Hicks knew that plaintiff was engaging in a protected activity.  <u>See</u> <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 155 (2d Cir. 2001)("the direct physical participation of the defendant in the constitutional violation is not alone a sufficient basis for holding the defendant liable if the defendant had no awareness or notice of the facts that rendered the action illegal"); <u>accord</u> <u>Gronowski v. Spencer</u>, 424 F.3d 285, 293 (2d Cir. 2005)("In a retaliation case, an employer's state of mind is necessarily at issue.").  Plaintiff's

grievances also do not allege that Hicks sanctioned plaintiff for contacting his attorney (see Nov. 26, 2007 Grievance; Dec. 19, 2007 Appeal).

Accordingly, I recommend that plaintiff's claims against Hicks be dismissed.

### e.   Defendant Suarez

Plaintiff also brings First Amendment and Due Process claims against Suarez.  The defendants move to dismiss these claims because plaintiff has not shown that Suarez personally participated in the unconstitutional conduct.

First, assuming that plaintiff has stated a Due Process claim with respect to the UDC hearing regarding the computer class sanction,[18] it appears that any allegedly unconstitutional conduct was directly perpetrated by Suarez.  Plaintiff's griev-ances allege that Suarez infringed his Due Process rights by (1) confronting him regarding his appeal in private, (2) providing him with only 18 days to appeal the UDC decision, and (3) forging defendant Cross' denial of plaintiff's appeal (Nov. 26, 2007 Grievance; Dec. 19, 2007 Appeal; see also Compl. ¶ 47).  Accord-ingly, plaintiff's Complaint contains allegations that Suarez was

---

[18]As noted above, the defendants have not, at this time, moved to dismiss either of the claims asserted against Suarez for failure to state a claim pursuant to Rule 12(b)(6).

personally involved in the alleged violations of plaintiff's Due Process rights.

Plaintiff also alleges that Suarez intentionally "sanctioned the plaintiff for communicating with his attorney" (Compl. ¶ 29).  Assuming that plaintiff has stated a First Amendment retaliation claim, Suarez allegedly participated in the unconstitutional conduct with the knowledge that he was punishing plaintiff in retaliation for engaging in a protected activity.

Thus, I conclude that these allegations are sufficient to withstand a motion to dismiss on the issue of Suarez's personal involvement and, accordingly, I recommend that Suarez's motion to dismiss plaintiff's claims against him for lack of personal involvement be denied.

### 5.   Plaintiff's Claims Under the FTCA

The defendants also argue that "[t]o the extent, plaintiff's complaint alleges a common law tort claim against the Federal Defendants, this Court lacks jurisdiction over any such cause of action" (Def. Mot. at 19).  In response to the defendants' motion to dismiss, plaintiff argues, however, that he "is not suing under [the FTCA]" (Plf. Resp. at 3); he also states "[t]he Complaint is based upon a constitutional right violation, not loss of property, or injury, as is actionable under FTCA" (Plf. Resp. at 4).

Accordingly, I need not address the validity of defendants' argument to dismiss the FTCA claims because plaintiff has stated that he is not asserting claims under the FTCA.

6.   Compensatory Damages

The defendants also argue that under the PLRA plaintiff is precluded from recovering compensatory damages for his emotional injuries absent a showing that he suffered a physical injury of some kind (Def. Mot. at 18-19).

42 U.S.C. § 1997e(e) provides

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The Second Circuit has held that Section 1997e(e) applies to "all federal civil actions including claims alleging constitutional violations." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002); Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999) (explaining that under the PLRA in "suits seeking damages for mental or emotional injuries" plaintiff must "make a prior showing of physical injury"); Van Gorder v. Workman, 03-CV-6409 (CJS), 2006 WL 3290297 at *2 (W.D.N.Y. Nov. 3, 2006); Lee v. DelFavero, 9:04 CV 382, 2005 WL 2387820 at *6 (N.D.N.Y. Sept. 28, 2005) (granting defendant's motion to dismiss plaintiff's claim for compensatory damages for "mental anguish and emotional

52

distress" for failure to plead physical injury); <u>Brewster v.</u> <u>Nassau County</u>, 349 F. Supp.2d 540, 553 (E.D.N.Y. 2004).

"If, however, the plaintiff alleges the violation of a constitutional right, the action is not entirely barred and the plaintiff may obtain injunctive or declaratory relief, and nominal or punitive, but not compensatory damages irrespective of any physical injury if [she] proves that violation." <u>Lipton v.</u> <u>County of Orange</u>, 315 F. Supp.2d 434, 457 (S.D.N.Y. 2004), <u>citing</u> <u>Thompson v. Carter</u>, <u>supra</u>, 284 F.3d at 418.  Thus, a plaintiff's failure to allege physical injury does not bar a claim for prospective injunctive relief.

Even construing plaintiff's amended complaint and his opposition to this motion liberally and as raising the strongest arguments possible, plaintiff has failed to allege that he sustained any physical injury as a result of the alleged incidents (<u>see</u> "Remedy Sought," Compl. at 19; Plaintiff's Memorandum of Law in Response to Defendants Motion to Dismiss ("Plf. Resp.") at 4, dated April 24, 2009 ("the plaintiff is not alleging loss of property or physical injury, other than the injury caused . . . by mental and emotional anguish")).  Rather, plaintiff's claim is that he suffered emotional and mental injuries as a direct result of the alleged constitutional violations and "must now take mental health medication to cope with his diagnosed post-[traumatic] stress disorder" (Compl. at 3).  "Even assuming that

53

[plaintiff] has suffered all of the [psychological and emotional] harms that he alleges, he still has not stated a cognizable cause of action for the violation of his right not to be harmed while in custody." Brewster v. Nassau County, supra, 349 F. Supp.2d at 553; see also Lee v. DelFavero, supra, 2005 WL 2387820 at *6 (granting defendant's motion to dismiss plaintiff's claim for compensatory damages for "mental anguish and emotional distress" for failure to plead physical injury). Plaintiff may not recover compensatory damages for the non-physical, emotional injuries that he allegedly suffered and any recovery that he could poten-tially receive is, therefore, limited to nominal and/or punitive damages.[19]  See Thompson v. Carter, supra, 284 F.3d at 418 ("Sec-tion 1997e(e) does not limit the availability of nominal damages for the violation of a constitutional right or of punitive damages"); Lipton v. County of Orange, supra, 315 F. Supp.2d at 457.

## IV. Conclusion

Accordingly, for all the foregoing reasons, I respect-fully recommend that the defendants' motion to dismiss all claims against the defendants in their official capacities be granted. I also recommend that Your Honor dismiss plaintiff's Eighth

---

[19]Plaintiff states that he is seeking punitive damages in the amount of ten million dollars ("Remedy Sought", Compl. at 19).

Amendment claims and plaintiff's First Amendment claims with respect to the allegedly retaliatory cell search and plaintiff's placement in the SHU.  Finally, I recommend that defendants' motion to dismiss all claims against defendants Sadowski, Desai, Cross, Gregg, Hicks, and Ortiz, for lack of personal involvement, be granted.  Defendants motion to dismiss plaintiff's First Amendment retaliation claim against Dodrill and Watts for lack of personal involvement should also be granted.

If this Report and Recommendation is accepted in its entirety it will result in the dismissal of all of plaintiff's claims except plaintiff's Due Process claims against Dodrill and Watts and plaintiff's claims against Suarez, Arries, Burgos, Dowd, Martinez, Pearson, Gomez, N'Diaye, Wade-Jones, Williams, and John/Jane Doe[20] that his First Amendment rights and his Due Process rights were violated by the sanction he received for attempting to contact his attorney during computer class.

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to

---

[20]Although it does not appear as if any of these defendants, other than Suarez, were personally involved in these alleged constitutional violations, the defendants have not moved to dismiss for lack of personal involvement and, accordingly, I do not address that issue at this time.

file written objections.  See also Fed.R.Civ.P. 6(a) and 6(d).
Such objections (and responses thereto) shall be filed with the
Clerk of the Court, with courtesy copies delivered to the cham-
bers of the Honorable Jed S. Rakoff, United States District
Judge, 500 Pearl Street, Room 1340, New York, New York 10007, and
to the chambers of the undersigned, 500 Pearl Street, Room 750,
New York, New York 10007.  Any requests for an extension of time
for filing objections must be directed to Judge Rakoff.  FAILURE
TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJEC-
TIONS AND WILL PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474
U.S. 140, 155 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9
F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298,
300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59
(2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir.
1983).

Dated:   New York, New York
         August 27, 2009

                                   Respectfully submitted,


                                   HENRY PITMAN
                                   United States Magistrate Judge



Copies Mailed To:

Mr. Alvaro R. Garcia
140 West 174th Street
Apt.# 2E

Bronx, New York   10452

Alicia M. Simmons, Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street
3rd Floor
New York, New York   10007