```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

ALVARO R. GARCIA,                        :

                    Plaintiff,           :
                                                08 Civ. 7778 (HBP)
       -against-                         :
                                                OPINION AND
HARRELL WATTS,                           :      ORDER
et al.,
                                         :

                    Defendants.
                                         :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:


I.   Introduction


Plaintiff, Alvaro Garcia, a former federal inmate at
the Metropolitan Correctional Center ("MCC") in New York, New
York commenced this pro se action on September 5, 2008 against
twenty-four named defendants and four John and Jane Does for
alleged violations of his constitutional rights pursuant to
Bivens v. Six Unknown Named Agents of the Federal Bureau of
Narcotics, 403 U.S. 399 (1971).  Most of plaintiff's claims have
been dismissed (see Docket Items 46, 50, 51, 55, 60 and 62),
except for his claims against Laticia Hicks, an MCC teacher, and
Hector Suarez, an MCC case manager, alleging that his First
Amendment rights were violated by disciplinary action taken
against him for writing a letter to an attorney in the MCC

computer lab.  The parties have consented to my exercising

jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c)

(Docket Item 83).

By notice of motion dated March 8, 2012 (Docket Item

92), defendants Hicks and Suarez move for summary judgment on

plaintiff's remaining claims.  For the reasons set forth below,

defendants' motion is denied.

II.  Facts

The alleged facts that give rise to the present action

are set forth in my Reports and Recommendations dated April 22,

2009, August 27, 2009, and June 21, 2010 (Docket Items 46, 50 and

60), familiarity with which is assumed.

On November 14, 2006, plaintiff was sentenced to a term

of thirty months imprisonment after pleading guilty to a conspir-

acy to defraud the Internal Revenue Service (Deposition of Alvaro

R. Garcia, dated Nov. 16 2011 ("Pl. Dep."), annexed as Ex. A to

Declaration of Sapna W. Palla, Esq. in Opposition to Defendants'

Motion for Summary Judgment, dated Feb. 27, 2012 (Docket Item

99)("Palla Decl."), at 22-24, 28).  On May 24, 2007, plaintiff

was transferred from the Allenwood Federal Correctional Institu-

tion in Pennsylvania to the MCC in New York (Affidavit of Alvaro

R. Garcia, sworn to Feb. 27, 2012 (Docket Item 98)("Pl. Aff."), ¶ 3).

In September 2007, plaintiff enrolled in a computer class at MCC, which taught inmates how to use Microsoft Word, Access and Excel (Pl. Dep. at 77-78; Deposition of Laticia Hicks, dated Nov. 29, 2011 ("Hicks Dep."), annexed as Ex. B to Declaration of Alicia M. Simmons, Esq., dated Feb. 8, 2012 (Docket Item 94)("Simmons Decl."), at 67). The computer class was taught by Roger Carter, an independent contractor, and was given at the MCC's computer lab (Pl. Dep. at 77-78; Hicks Dep. at 57). Documents created by inmates during the class were stored on removable hard drives, which had to be requested from prison staff by inmates prior to the class and returned to prison staff at the end of class (Pl. Dep. at 90-92; Hicks Dep. at 93-95). Inmates enrolled in the computer class were permitted to practice their computer skills both during and outside regular class time (Pl. Dep. at 92-96). According to plaintiff, inmates were permitted to use their practice time to draft personal letters using Microsoft Word, and he observed other inmates using the computers for this purpose (Pl. Aff. at ¶ 11; Pl. Dep. at 108-09). Plaintiff states that during a practice period, he wrote letters to several attorneys and organizations seeking legal assistance with respect to sexual assaults allegedly committed

against him by a prison officer (Pl. Aff. at ¶ 20; Pl. Dep. at 137-38).  According to plaintiff, Carter printed his letters for him on multiple occasions (Pl. Dep. at 134-35).  Plaintiff asserts that the inmates were not required to seek permission before using any particular computer program during a practice period (Pl. Aff. at ¶¶ 17-18; Pl. Dep. at 101-02).

It is undisputed that on November 14, 2007, while in the computer lab, plaintiff was writing a letter to an attorney with the Federal Defenders seeking legal representation with respect to the alleged sexual assaults (Pl. Dep. 110-11; see Incident Report, dated Nov. 14, 2007 ("Incident Report"), annexed as Ex. F to Palla Decl., at BOP_00341-BOP_00350).  It is also undisputed that at some point, Defendant Hicks observed plaintiff writing the letter and issued an Incident Report to him charging him with unauthorized conduct, namely, using Microsoft Word when he had only been given permission to use Microsoft Excel, a spreadsheet program (Incident Report at BOP_00341-BOP_00350).

Plaintiff claims that prior to entering the computer lab on November 14, 2007, he signed a log sheet and asked Hicks for a removable hard drive, which she gave him without asking him any questions or issuing any instructions (Pl. Aff. at ¶ 23; Pl. Dep. at 115).  Plaintiff further alleges that at some point while he was drafting his letter, Hicks entered the computer lab and

stood closely behind him facing the computer screen (Pl. Aff. at ¶ 26; Pl. Dep. at 121-23).  Hicks then instructed plaintiff to save the letter and shut down the computer, and plaintiff complied (Pl. Aff. at ¶ 26; Pl. Dep. at 122-24).  Plaintiff claims that Hicks never gave him any warning that he should have been using Microsoft Excel instead of Microsoft Word before ordering him to shut down his computer, and defendants do not appear to controvert this point (Pl. Aff. at ¶ 27).  Hicks does claim that she would only grant an inmate access to the computer lab if the inmate specifically identified the program he or she intended to use (Hicks Dep. at 130-32).

Plaintiff also claims that on November 15, 2007, he was taken to defendant Suarez's office (Pl. Aff. at ¶ 31; Pl. Dep. at 157-58).  Plaintiff asserts that while he was alone with Suarez, Suarez, who was in possession of the Incident Report and plaintiff's letters, called plaintiff "crazy," cursed at plaintiff for writing to an attorney, called the allegations in plaintiff's letter "BS," and said that he was going to "take care of business" (Pl. Aff. at ¶ 31; Pl. Dep. at 157-62).  Plaintiff further asserts that during this meeting, Suarez never admonished him for using Microsoft Word instead of Microsoft Excel (Pl. Aff. at ¶ 31).

It is also undisputed that on November 15, 2007, Suarez conducted the Unit Disciplinary Committee ("UDC") hearing at which plaintiff was found guilty of engaging in the prohibited act of "Using any Equipment or Machinery Contrary to Instructions or Posted Safety Standards (Code 319)" (Incident Report at BOP_00341-BOP_00343).  The punishment for this prohibited act was 90 days loss of commissary, 60 days loss of phone privileges suspended 180 days pending clear conduct, and transfer to Unit 5 North for 90 days (Incident Report at BOP_00341).  According to plaintiff, Unit 5 North housed pre-trial inmates at all levels of security risk, including inmates facing charges of murder (Pl. Aff. at ¶¶ 34-37).  In contrast, Unit 5 South, where he had been housed before the hearing, contained mostly low-risk "cadre" inmates, who were given privileges such as a later lock-down time, more visitation hours and better exercise facilities (Deposition of Stephen Espinet, dated Dec. 8, 2011 ("Espinet Depo."), annexed as Ex. J to Palla Decl., at 22, 88-90, 211; Deposition of Joyce Moore, dated Jan. 5, 2011, annexed as Ex. K to Palla Decl., at 120-21; Pl. Dep. at 178-79; Suarez Dep. at 24-25, 125).  Plaintiff claims that while housed in Unit 5 North, he witnessed constant physical altercations among inmates and was regularly threatened with violence (Pl. Aff. at ¶¶ 35-39).  As a

result, plaintiff claims, he suffered mental harm and had to seek

counseling (Pl. Aff. at ¶ 40).


III.  Analysis


    A.  Standards Applicable to a
        Motion for Summary Judgment


        The standards applicable to a motion for summary

judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there
> is no genuine issue as to any material fact and the
> moving party . . . is entitled to a judgment as a
> matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a
> motion for summary judgment, a court must resolve all
> ambiguities and draw all factual inferences in favor of
> the nonmoving party.  Anderson v. Liberty Lobby, Inc.,
> 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202
> (1986).  To grant the motion, the court must determine
> that there is no genuine issue of material fact to be
> tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23,
> 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine
> factual issue derives from the "evidence [being] such
> that a reasonable jury could return a verdict for the
> nonmoving party."  Anderson, 477 U.S. at 248, 106 S.Ct.
> 2505.  The nonmoving party cannot defeat summary judg-
> ment by "simply show[ing] that there is some metaphysi-
> cal doubt as to the material facts," Matsushita Elec.
> Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586,
> 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual
> argument based on "conjecture or surmise," Bryant v.
> Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The Su-
> preme Court teaches that "all that is required [from a
> nonmoving party] is that sufficient evidence supporting
> the claimed factual dispute be shown to require a jury
> or judge to resolve the parties' differing versions of
> the truth at trial."  First Nat'l Bank of Ariz. v.
> Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575,
> 20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526

7

> U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).
> It is a settled rule that "[c]redibility assessments,
> choices between conflicting versions of the events, and
> the weighing of evidence are matters for the jury, not
> for the court on a motion for summary judgment."
> <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997).

<u>McClellan v. Smith</u>, 439 F.3d 137, 144 (2d Cir. 2006); <u>accord</u> <u>Hill v. Curcione</u>, 657 F.3d 116, 124 (2d Cir. 2011); <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553-54 (2d Cir. 2005);  <u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir. 2004).

"Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Coppola v. Bear Stearns & Co., Inc.</u>, 499 F.3d 144, 148 (2d Cir. 2007), <u>quoting</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>accord</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007).  "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'"  <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 788 (2d Cir. 2007), <u>quoting</u> <u>Readco, Inc. v. Marine Midland Bank</u>, 81 F.3d 295, 298 (2d Cir. 1996).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Vann v. City of New York, 72 F.3d 1040, 1048 (2d Cir. 1995).  "A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."  Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996).

The Court of Appeals for the Second Circuit has explained that "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion."  Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

                    B.    First Amendment
                          Retaliation Claims


          Plaintiff alleges that his First Amendment rights were

violated when he was punished for writing a letter to an attorney

regarding sexual abuse and harassment he allegedly suffered at

MCC.  Defendants argue that the alleged retaliatory conduct did

not rise to the level necessary to sustain a First Amendment

claim.

          In order to prevail on a First Amendment retaliation

claim, a plaintiff must prove, "(1) that the speech or conduct at

issue was protected, (2) that the defendant took adverse action

against the plaintiff, and (3) that there was a causal connection

between the protected speech and the adverse action."  Espinal v.

Goord, 558 F.3d 119, 128 (2d Cir. 2009), citing Gill v.

Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004); Bennett v. Goord,

343 F.3d 133, 137 (2d Cir. 2003); Dawes v. Walker, 239 F.3d 489,

492 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v.

Sorema N.A., 534 U.S. 506 (2002).  "The Second Circuit has

admonished district courts to approach prisoner retaliation

claims 'with skepticism and particular care,' because 'virtually

any adverse action taken against a prisoner by a prison official

-- even those otherwise not rising to the level of a constitu-

tional violation -- can be characterized as a constitutionally

                               10

proscribed retaliatory act.'"  Bumpus v. Canfield, 495 F. Supp.

2d 316, 325 (W.D.N.Y. 2007), quoting Dawes v. Walker, supra, 239

F.3d at 491.

There is no dispute that plaintiff's writing a letter

to an attorney was a constitutionally protected activity.

"Prisoners, like non-prisoners, have a constitutional right of

access to the courts and to petition the government for the

redress of grievances, and prison officials may not retaliate

against prisoners for the exercise of that right"  Colon v.

Coughlin, 58 F.3d 865, 872 (2d Cir. 1995), citing Franco v.

Kelly, 854 F.2d 584, 589 (2d Cir. 1988); see Ahlers v. Grygo,

02-CV-3256 (JG)(LB), 2009 WL 3587483 at *4 (E.D.N.Y. Oct. 27,

2009) ("[r]eporting the wrongdoing of corrections officers and

other prison officials . . . qualifies as protected speech under

the First Amendment").

With respect to the second element of the claim, an

adverse action, the Second Circuit has held that

> "Only retaliatory conduct that would deter a similarly
> situated individual of ordinary firmness from exercis-
> ing his or her constitutional rights constitutes an
> adverse action for a claim of retaliation."  Dawes, 239
> F.3d at 493.  See also Thaddeus -X v. Blatter, 175 F.3d
> 378, 398 (6th Cir. 1999) (retaliation against an inmate
> must be likely to "chill a person of ordinary firmness
> from continuing to engage" in a protected activity).
> "Otherwise the retaliatory act is simply de minimis and
> therefore outside the ambit of constitutional protec-
> tion."  Dawes, 239 F.3d at 493.  In making this deter-

11

mination, the court's inquiry must be "tailored to the
different circumstances in which retaliation claims
arise," bearing in mind that "[p]risoners may be re-
quired to tolerate more . . . than average citizens,
before a [retaliatory] action taken against them is
considered adverse."  Id. (quoting Thaddeus -X, 175
F.3d at 398).

Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003); see Espinal v.

Goord, supra, 558 F.3d at 129 n.7; Beckles v. Bennett, 05 Civ.

2000 (JSR), 2008 WL 821827 at *23 (S.D.N.Y. Mar. 26, 2008)

(Rakoff, D.J.) (adopting Report & Recommendation of Freeman,

M.J.); McClenton v. Menifee, 05 Civ. 2844 (JGK), 2006 WL 2474872

at *12 (S.D.N.Y. Aug. 22, 2006) (Koeltl, D.J.); Pledger v.

Hudson, 99 Civ. 2167 (LTS)(THK), 2005 WL 736228 at *5 (S.D.N.Y.

Mar. 31, 2005) (Swain, D.J.).

There appears to be no dispute that two of the three

sanctions imposed on plaintiff -- his loss of commissary and

telephone privileges -- are insufficient to constitute adverse

actions.  Accordingly, the only potentially adverse action

suffered by plaintiff was his ninety-day transfer from Unit 5

South to Unit 5 North.

In my June 21, 2010 Report and Recommendation, I noted

that courts within this Circuit have held that a transfer to

another housing unit can constitute an adverse action, especially

when such transfer is accompanied by negative consequences (see

Docket Item 60 at 20-21, citing Allah v. Poole, 506 F. Supp. 2d

12

174, 187 (W.D.N.Y. 2007); Chavis v. Struebel, 317 F. Supp. 2d

232, 238-39 (W.D.N.Y. 2004); Walker v. Pataro, 99 Civ. 4607

(GBD)(AJP), 2002 WL 664040 at *8 (S.D.N.Y. Apr. 23, 2002) (Peck,

M.J.)(Report & Recommendation)).

         Defendants argue that "plaintiff was transferred back

into the very unit in which he was placed in the beginning of his

tenure at the MCC," (Memorandum of Law in Support of Federal

Defendants' Motion for Summary Judgment, dated Feb 8. 2012

(Docket Item 93)("Defs. Mem."), at 12), suggesting that the fact

that plaintiff had previously been housed in Unit 5 North somehow

alters the nature of the conditions in Unit 5 North.  However,

the adversity of an action is measured against an objective

"similarly situated individual of ordinary firmness" standard.

Davis v. Goord, supra, 320 F.3d at 353 (2d Cir. 2003).

Therefore, plaintiff's previous stay in Unit 5 North, even if it

may have lessened the psychological impact of his transfer back,

hardly shows why Defendants are entitled to judgment as a matter

of law.  Defendants' argument that "plaintiff was exposed to pre-

trial inmates while he was housed in Unit 5 South," and thus, his

transfer "would not deter a similarly situated inmate from

exercising his First Amendment rights because cadre inmates are

exposed to pretrial inmates throughout their incarceration at the

MCC" is similarly flawed (Defs. Mem. 13-14).  There is a funda-

mental difference between the occasional interaction with pre-trial inmates that plaintiff experienced in Unit 5 South and the constant exposure he faced in Unit 5 North while living amongst them.

In response to defendants' motion, plaintiff has adduced additional evidence that his transfer to Unit 5 North resulted in negative consequences in the form of exposure to a potentially more dangerous class of inmates than the cadre inmates he lived with in Unit 5 South (Pl. Aff. at ¶¶ 35-39). Indeed, plaintiff has presented evidence that while in Unit 5 North, he was threatened with violence, for which he had to seek subsequent mental counseling (Pl. Aff. at ¶ 40). Thus, as was the case in my June 21, 2010 Report and Recommendation, I conclude that I "cannot say that placement of an inmate facing a 30 month sentence and who posed a low security risk into a unit that housed inmates at maximum security levels is insufficient, as a matter of law, to deter a person of ordinary firmness from exercising his constitutional rights" (Docket Item 60 at 21-22). In addition, the fact that Suarez transferred plaintiff to Unit 5 North as part of plaintiff's punishment for engaging in a prohib-ited act is itself evidence that Unit 5 North was different and less desirable than Unit 5 South -- if the two units were sub-

stantially the same, it would make no sense to transfer an inmate from one unit to another as punishment.

Because defendants have cited no controlling authority that warrants a different conclusion, there remains a factual dispute as to whether plaintiff's transfer constituted an adverse action and summary judgement is inappropriate.

Factual disputes also remain with respect to the third element of plaintiff's First Amendment retaliation claim, i.e., whether there was a causal connection between the protected activity and the adverse action.  To satisfy this element, a plaintiff must allege facts suggesting "that the protected conduct was a 'substantial or motivating factor' in the prison officials' decision to take action against the plaintiff."  Smith v. Christopher, 06-CV-1196 (LEK/DEP), 2008 WL 4283519 at *10 (N.D.N.Y. Sept. 16, 2008), quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); see Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007); Dawes v. Walker, supra, 239 F.3d at 492.  Facts suggesting an improper motive may be circumstantial and can include "(1) temporal proximity between the protected activity and the alleged retaliatory act; (2) the plaintiff's prior good disciplinary record; (3) the plaintiff's vindication at his disciplinary hearing; and (4) the defendants' statements regarding their motive for the discipline."  Chavis v.

<u>Kienert</u>, 9:03-CV-0039 (FJS)(RFT), 2005 WL 2452150 at *16

(N.D.N.Y. Sept. 30, 2005), <u>citing</u> <u>Colon v. Coughlin</u>, <u>supra</u>, 58

F.3d at 872-73; <u>accord</u> <u>Espinal v. Goord</u>, <u>supra</u>, 558 F.3d at 129-

30; <u>Bartley v. Collins</u>, <u>supra</u>, 2006 WL 1289256 at *8.

In my June 21, 2010 Report and Recommendation, I

determined that plaintiff had adequately alleged a causal connec-

tion between his protected activity and the alleged adverse

action he suffered:

> In this case, there is a close temporal connection
> between plaintiff's protected conduct and the adverse
> action.  Furthermore, assuming the truth of all facts
> alleged by the plaintiff, there is an obvious causal
> connection between plaintiff's protected conduct and
> the incident report and resulting sanctions.  Plaintiff
> alleges that Hicks read the letter that plaintiff was
> typing during the computer class and, although there
> was no legitimate reason to discipline him for using
> Microsoft Word at that point in the class, issued an
> incident report charging plaintiff with unauthorized
> conduct.  The outcome of the UDC hearing on that inci-
> dent report was, <u>inter alia</u>, plaintiff's transfer to
> Unit 5 North.  This alleged sequence of events suggests
> that plaintiff's letter to [an attorney] was a "'sub-
> stantial or motivating factor' in the prison officials'
> decision to take action against the plaintiff."

Docket Item 60 at 27-28.  Nevertheless, defendants continue to

argue that plaintiff's allegations are no more than "specula-

tion," stating that "Hicks did not make any comments to plaintiff

regarding the content of the letter," and that plaintiff does not

know "whether Hicks looked at his computer screen before she

directed him to save the document and turn off the computer"

16

(Defs. Mem. at 19).  However, these assertions are belied by
plaintiff's Incident Report, in which Hicks clearly states that
she witnessed plaintiff "preparing a letter" (Incident Report at
BOP_00343).  Moreover, in responding to defendants' present
motion, plaintiff has produced additional evidence of defendants'
retaliatory animus, including the fact he had a clean disciplin-
ary record prior to the incident at issue (Pl. Aff. at ¶ 29;
Espinet Depo. at 192-93), and the fact that none of the Bureau of
Prisons witnesses he deposed could cite any other instances of
prisoners being disciplined for similar conduct (see Memorandum
of Law in Opposition to Defendants' Motion for Summary Judgment,
dated Feb. 27, 2012 (Docket Item 96), at 11).  Suarez's reaction
to the Incident Report constitutes additional circumstantial
evidence of retaliatory animus.  According to plaintiff, Suarez
scolded plaintiff based on the content of the letters; he never
raised any issue concerning plaintiff's alleged failure to use
Microsoft Excel (Pl. Aff. ¶ 31).  In short, plaintiff's claims
that defendants' motivations were improper are clearly based on
more than baseless speculation, and many sharp factual disputes
remain, including, inter alia, whether plaintiff was given
permission to use the computer lab, what the scope of any permis-
sion given was, and whether or when Hicks and Suarez had
knowledge of the contents of plaintiff's letter.

17

Thus, because genuine issues of fact exist as to the second and third elements of plaintiff's claim that defendants violated his First Amendment rights by disciplining him in retaliation for seeking legal representation, summary judgment is denied.


C.    Qualified Immunity

Suarez argues that even if a genuine issue of material fact exists as to whether he violated plaintiff's First Amendment rights, he is entitled to summary judgment based on the doctrine of qualified immunity (Defs. Mem. at 15-18).  However, he is mistaken.  "Where specific intent of a defendant is an element of plaintiff's claim under clearly established law, and plaintiff has adduced sufficient evidence of that intent to defeat summary judgment, summary judgment on qualified immunity grounds is inappropriate."  Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003); see Adams v. Ellis, 09 Civ. 1329 (PKC), 2009 WL 4927521 at *6 (S.D.N.Y. Dec. 16, 2009) (Castel, D.J.); Beechwood Restorative Care Ctr. v. Leeds, 811 F. Supp. 2d 667, 675 (W.D.N.Y. 2011)("With regard to qualified immunity, the Court of Appeals has also made clear, both in this case and elsewhere, that summary judgment on that ground is generally inappropriate with respect to First Amendment retaliation claims.  If defen-

dants acted with retaliatory intent, then no rational factfinder could conclude that they could have reasonably believed that their actions were lawful."); <u>Bussey v. Phillips</u>, 419 F. Supp. 2d 569, 589 (S.D.N.Y. 2006) (Marrero, D.J.).

Thus, Suarez's summary judgment motion to dismiss plaintiff's First Amendment retaliation claim on the ground of qualified immunity is denied.

V.   <u>Conclusion</u>

Accordingly, for all the foregoing reasons, the defendants' motion for summary judgment is denied.

Dated:   New York, New York
         February 15, 2013

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge

Copies Transmitted To:

Ira Ginsberg, Esq.
Sapna W. Palla, Esq.
Navin K. Pant, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, New York   10022-3598

```
Alicia M. Simmons, Esq.
Assistant United States Attorney
Southern District of New York
3rd Floor
86 Chambers Street
New York, New York  10007
```

20